**UNITED STATES v. KRUPNICK et al., and fifteen other cases.**

Nos. 1324c, 1242c, 1237c to 1241c, 1243c to 1248c, 1263c, 1265c, 1266c.

District Court, D. New Jersey.

Oct. 4, 1943.

984

Thorn Lord, Asst. U. S. Atty., of Trenton, N. J., and Nathan L. Jacobs and John D. Masterton, Sp. Assts. to Atty. Gen., for the United States.

Morris H. Cohn, of Newark, N. J., for defendants Peter Golas, Superb Packing Co., Inc., State Packing Co., Inc., Liebmann Packing Co., Inc., Herbert C. Liebmann, U. S. Packing Co., Inc., Sam Simon, Albert Simon, Max Steinhardt, Inc., Max Steinhardt, Clem Lockerty, John Doe Sherman, Edward A. Carroll, Leo Oshinski, and Fred Horns.

Abram I. Bluestein, of Paterson, N. J., and Feder & Rinzler, of Passaic, N. J., for defendants Nathan Krupnick, George Moran, and Enkay Packing Co., Inc.

John B. Graf and Edward J. O'Mara, both of Jersey City, N. J., for defendant Morris Freund.

John J. Nangle and John S. Leahy, both of St. Louis, Mo., and Andrew B. Crummy, of Newark, N. J., for defendants Jacob Schmidt and Kansas City Dressed Beef Co.

John J. Clancy, of Newark, N. J., for defendants Nebraska Beef Co., Jacob R. Cohn, Samuel E. Jacobs, and Leo Waxenberg.

John Milton, of Jersey City, N. J., for defendants Leo Schloss, Inc., Edward Nagle, Donald Nagle, Joseph Cohen, and Iggy Warren.

Michael G. Alenick, of Newark, N. J., for defendant Isidor W. Feldman, and Seymour Feldman.

Sanford Silverman, of Newark, N. J., for defendants Metropolitan Beef Co., Inc., and Albert Abeles.

Michael Silver, of Newark, N. J., for defendant Max Tischler.

Harold Simandl and Arthur T. Vanderbilt, both of Newark, N. J., for defendants Gustave Sobo, Edward Bradigan, Anthony Caruso, Meyer Barnett, and Edward Fishbein.

Louis K. Press, of Newark, N. J., for defendant Hugo Herbst.

David G. Smith, of Paterson, N. J., for defendant Isie Schindel.

Charles A. Rooney, of Jersey City, N. J., for defendant Kenneth Hansen.

Harry Silverstein, of Milburn, N. J., for defendants Paul Maybaum and Jerry Pressman.

MEANEY, District Judge.

Defendants were indicted for violations of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 201 et seq., and Maximum Price Regulation No. 169 as revised and amended, in that they knowingly, wilfully and unlawfully sold quantities of beef in excess of prices permitted under the regulation and failed to keep and preserve a complete and accurate record of such sales. There is also an indictment

for conspiracy to violate the aforesaid Act and Regulation considered in this opinion.

Motions to quash the indictments are made with various grounds assigned therefor. First: The Emergency Price Control Act of 1942 is unconstitutional. Second: The Regulation No. 169 is unconstitutional and discriminatory. Third: The indictments are generally vague and indefinite and fail fairly to apprise the defendants of the crime charged. These are the main objections to the indictment, though others will be disposed of also.

To take up the constitutionality of the Emergency Price Control Act, it would appear that the basis of objection to the enforcement, by criminal prosecution or otherwise, of regulations of Administrative bodies authorized by Congress, such as those under consideration, seems to be, that such regulations, aimed though they may be at the prevention of inflation, profiteering, hoarding, manipulation, and other disruptive practices arising directly or indirectly out of the national emergency, are violative of constitutional prohibitions and directions. In a government such as ours, founded as it is upon a charter of rights, and upon nominated safeguards against tyranny, it is vitally essential that those constitutional restrictions on legislative action which are necessary for such protection, be preserved in their full force and vigor. In the prosecution of a war as all-affecting and all inclusive as is the one in which we are at present involved, it must be remembered that the constitution with all of its provisions must be preserved inviolate, no matter what the temptation to suspend it in any of its parts in behalf of an all out endeavor to render the war effort of our people totally effective. To win the war abroad at the cost of freedom at home would be a cruel mockery and stultification of the aspirations of a people dedicated to the sacred cause of human liberty.

▮ And therefore legislation passed under the guise of an exercise of the "war powers" of government must be carefully scrutinized, for nothing is granted to Congress for its action during war time, and under its war powers, which is categorically denied it by constitutional provisions, for these are supreme in every condition of the nation's existence, be it war with its menaces, or peace with its promises. Sacrifices, unnecessary in quieter times, become the ordinary lot of war-tortured peoples; but those sacrifices which our citizens are called upon to make, must not be accompanied by the destruction of basic rights which make this a land of freedom, orderly government, and constitutional guarantees.

▮ But within the confines of constitutional limitations the will of Congress in its attempts to foster proper prosecution of the war and at the same time to preserve economic stability, should be given sympathetic and reasonable interpretation. That hardships may ensue from the enforcement of its expressed will as enacted into law is no reason for refusing to accept such enforcement where it is a proper exercise of authority. In many instances, measures deemed necessary for the maintenance of the structure of government and for the protection of the decent democratic way of life may result in deprivation and loss to many citizens; but such woes, attendant on the battle of civilization, are not of necessity improper distortions of our way of life, and are negligible when compared to what the armed forces endure, all in the way of lawful compliance with the requirements of bearing the burden of participation in the total of citizenship.

▮ Being ever mindful of the exigences of the particular occasion, the Congress in creating an act such as the Emergency Price Control Act delegating powers to a particular agency or administration, is bound by certain definite and circumscribing limitations, these limitations being co-extensive with the powers granted by its mainspring—the Constitution. The taking over and operation of railroads (Northern Pacific Railway Co. v. North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897); the taking over the operation of telephone and telegraph lines (Dakota Central Telephone Co. v. State of South Dakota, 250 U.S. 163, 39 S.Ct. 507, 63 L.Ed. 910, 4 A.L.R. 1623); compulsory military service (Arver v. United States, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann. Cas.1918B, 856); authorizing the Secretary of Agriculture to set minimum milk prices based on parity, and adjusted if necessary (United States v. Rock Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446); the delegation of powers by Congress under the Bituminous Coal Act of 1937, 15 U.S.C.A. § 828 et seq. (Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263) are some of the many delegations of power exercised by the Con-

gress under the Constitution which have been upheld by the Supreme Court.

The Act in question was sustained by a three-judge court in Henderson v. Kimmel, D.C., 47 F.Supp. 635, in its relation to the ceiling on rents; and with reference to the price control feature (United States v. Hark, D.C., 49 F.Supp. 95); indictment dismissed on other grounds. On an indictment for selling commodities in violation of maximum prices, demurrers to the indictment were overruled in United States v. C. Thomas Stores, Inc., D.C., 49 F.Supp. 111, 112, 113. The court in the latter case said: "The test, therefore, to be applied is this: Has Congress clearly and fully stated its purposes and objects, and has it established standards by which such purposes are to be accomplished?"

■ The present act meets this test. It is on a parity with the other powers exercised by the Congress in the situations heretofore set forth. The method of establishing maximum prices was generally outlined, but detailed and itemized specifications to be relied upon by the administrator were not, and by the very nature of the task, could not be meticulously provided. The Act does, however, make manifest its policy or purpose and establishes the standards which are to serve as basis for the development of that policy and the working out of its details. This is sufficient specification to meet the requirements for justification of delegation, not of law making authority, but of powers necessary to carry out the legislative purpose. The provisions of the Act are applicable to all portions of the country and are to be applied to those portions, which may vary from day to day, wherein the emergency situation may be declared to exist. No special singling out of any district limits its application, it is general in its scope and extension. Where local agencies operate to render them unnecessary, the regulations authorized by the Act are not imposed. The Act places a duty on the Administrator to study pertinent data and to establish prices as a result of adjustment made in view of relevant factors of general applicability.

In this connection defendants make the point that the Act is unconstitutional since it grants power to the Administrator which amounts to determination of what acts shall be criminal. Looking to the Act, it is found that Congress declared what acts shall be criminal in section 205(b), 50 U.S. C.A.Appendix § 925(b), and has relegated

to the Administrator the task of making the detailed specifications necessary for the fulfillment of Congressional will. See United States v. Grimaud, 220 U.S. 506, 517, 31 S.Ct. 480, 55 L.Ed. 563.

It is contended that the regulations, violation of which are charged, are unconstitutional for the reason that by operation of these regulations, the defendants are deprived of their property without due process of law, and without due compensation, and that their rights to be informed of the nature and cause of the accusation against them have been violated.

It is further alleged that the provisions of the regulation contravene the express provisions of the Emergency Price Control Act of 1942 and that the Price Administrator in promulgating the regulations acted arbitrarily, capriciously and beyond the scope of his authority.

■ Insofar as the assertion is concerned that the regulation in question violates the 5th and 6th Amendments to the Constitution, it would seem to the Court that such is not the case. The regulation was made by virtue of the authority expressly granted by the Act itself, an authority which, it has been determined, was bestowed by Congress without conflict with constitutional restriction. Whether or not that authority was transcended, and whether the Administrator acted capriciously and arbitrarily in devising the terms of the regulation and whether the regulation conformed to the provisions of the Act is another question. There is a well defined distinction between the question of the constitutionality of the Act itself and the validity of the Regulation made by virtue of the Act and the powers granted the Administrator therein.

■ Both the Government and the defendants recognize the inherent right of the Court to pass on the constitutionality of the Act in all of its phases. The difficulty is created when the defendants assume to attack the constitutionality of the regulations when (as a matter of fact) what they are in reality attacking is the validity of the regulations or their conformity to the provisions of the Act. There would seem to be no doubt that the Emergency Price Control Act is constitutional. And it would further seem incontestible that the Administrator, in devising the schedules and terms of the Regulation, acted under the directions to him contained in the Act. Whether he acted within the

confines of his province and met the requirements of the act in framing Regulation 169 is something which may be questioned by the means provided for in the Act itself, and not by way of challenging the constitutionality of his decisions, which would seem in nowise to be involved.

The Emergency Price Control Act provides for a certain procedure to be followed by the Administrator in the establishment of maximum prices and further provides for penalties for violation of the regulations or orders establishing such prices, and in Sec. 205 gives district courts jurisdiction of criminal proceedings for such violations. It further provides a method of administrative review and ultimate court review of price and rent regulations by the provisions of sections 203 and 204 of the Act, 50 U.S.C.A.Appendix §§ 923, 924. The rights of individuals would seem to be covered in all respects by these provisions.

■ Section 204(d) provides as follows: "* * * The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision." Should any person affected by a regulation or order issued under section 2, 50 U.S.C.A.Appendix § 902, feel that the regulation was improvidently or arbitrarily issued, or issued without due compliance with the terms of the Act, a method of review, with final recourse to the Supreme Court, is provided, the ultimate in protection of his rights. That such person is required to take affirmative action in safeguarding his rights cannot be deemed a hardship. And that he may have recourse only to the specially designated court as the forum in which he may pursue his remedies is not a contravention of his constitutional prerogatives, as has been decided in Lockerty et al. v. Phillips, D.C., 49 F.Supp. 513, affirmed by the Supreme Court in an Opinion handed down on May 10, 1943, 63 S.Ct. 1019, 87 L.Ed. ——.

The defendants herein take the position that they may ignore the regulations and orders made by the Administrator of the Act in fulfilment of its purpose, ignore the safeguards established by law for relief therefrom, should they be deemed oppressive, proceed to violate the regulations and then request the district court in the event of an indictment to which they must respond, to inquire into the validity of the regulations by alleging their unconstitutionality. In one of the instant cases, one defendant, engaged in the affected industry after promulgation of the regulations, and is charged in effect with entering it in order to profit by deliberate violations. As has been indicated, it is the opinion of the court that the regulations have been issued constitutionally, and the sole means of questioning their effect was open to all through the method set forth in section 204(d) of the Act, which established the Emergency Court of Appeals with review to the Supreme Court. It does not appear that such a situation deprives the defendants of their rights to urge as a defense the unconstitutionality of an Act under which they are charged with an offense, nor does it deprive this court of its right to pass upon such a defense. As a matter of fact, the constitutionality of that portion of the Act upon which the regulations have been based has been attacked as unconstitutional and that constitutional question has been passed upon, as indicated in the course of this opinion several times. If the defendants desire to set up as a defense at the trial the invalidity of the regulation, they may do so by pursuing the simple course open to them of following the statutory procedure of appealing to the Emergency Court for a ruling; and in attempting to answer the question of the forum in which invalidity of the regulation may be urged, it may be well to consider whether such invalidity might be set up as a defense in a criminal trial even after the Supreme Court had determined that it was valid, on appeal from a hearing before the Emergency Court. Such a contention would seem inconsistent and futile to say the least.

This Court realized that the rights of every individual must be jealously guarded, particularly in a criminal case, where liberty may be at stake. The accused should be foreclosed of no legitimate defense, and every protection guaranteed him by our system of jurisprudence must be preserved for him. But where his every right is afforded means of effective expression, he may not complain because he elects not to take advantage of the safeguards afforded him in the manner lawfully out-lined for him. In the present instance, endless confusion and conflict might result from pursuit of any other course, confusion and conflict avoidable by recourse to orderly legal steps, established within Constitutional limitations by Congress in an attempt to forestall just such a distressful state of affairs. Convenience of the individual where his fundamental rights are not affected must yield to provisions for general good.

Further ground for objection is urged by the defendants that the indictments are so general and vague as to give them no means to know exactly what charge to meet nor sufficient information upon which to prepare an adequate defense; that the charging portion of the indictments do not plead the object of the conspiracy, and that it sets forth the conclusions of the pleader.

█ An indictment to be valid must charge a crime with certainty, clearly setting forth every ingredient, advising the accused beyond any doubt of what crime accusation is made, and it must protect the accused from a second prosecution for the same offense. Haynes v. United States (citing precedent authority) 2 Cir., 4 F.2d 889. The indictments in the instant case would seem to meet these requirements. A significant pronouncement, in this connection, was made by the Court in the case of Miller v. United States, 6 Cir., 300 F. 529, 532, wherein the following statement was made: "The indictment is attacked as insufficient, because it states conclusions, does not state all the necessary elements of the crime, relies upon the overt acts to make it complete, does not negative facts * * * is in too general terms, [which] would not prevent a subsequent conviction, and does not enable the defendant to prepare for trial. * * * This indictment * * * is sufficient against all the objections urged, which are all covered by our recent decisions. Dierkes v. United States, 6 Cir., 274 F. [75], 78, 79; Rudner v. United States, 6 Cir., 281 F. 516; Robilio v. United States, 6 Cir., 291 F. 975; Remus v. United States, 6 Cir., 291 F. 501; DeWitt v. United States, 6 Cir., 291 F. 995, 998; Hindman v. United States, 6 Cir., 292 F. 679; Huth v. United States, 6 Cir., 295 F. 35. * * * As pointed out in the Huth case, supra, a judgment on such an indictment is a bar to subsequent prosecution for any offense which could have been proved under the indictment, and the very generality of its terms, therefore, make it the more ample protection. The objection that such general statements do not give defendant sufficient knowledge to enable him to prepare for trial is no longer of its former importance, since most defects of this character * * * can now be cured by obtaining a bill of particulars."

█ Another ground of objection to the indictments is based on the charge that the indictments were found by the Grand Jury without any evidence having been presented to that body touching upon the matters referred to therein. Several affidavits were filed with the court in support of the motion, but those affidavits consisted of statements of belief on the part of the affiants that the persons who appeared before the Grand Jury had no first hand knowledge of the matters set forth in the indictments. Surmise, suspicion, belief, these are not sufficient bases for negativing the action of the Grand Jury, which is presumed to proceed according to law. The language of some of the Courts which have considered motions to quash indictments on this ground has been rather strong. Suffice it to say that in accord with numerous decisions, among them United States v. Nevin, D.C., 199 F. 831; Radford v. United States, 2 Cir., 129 F. 49, the Court does not, on the showing offered, feel that it must investigate the character of the evidence offered to the Grand Jury.

The question as to whether the Grand Jury which returned the indictments was not constituted as required by law, and was not a body authorized to act, is effectively disposed of by the decision in United States v. Perlstein, D.C., 39 F.Supp. 965, affirmed 3 Cir., 126 F.2d 789.

█ Some of defendants allege that there is a duplicitous count in some of the indictments. To the Court it would seem that the explicit language of the affected counts is capable of only one construction, and that is that but one offense is charged.

Hence there is no duplicity in those counts, giving the language used therein its ordinary signification.

Finally there remains to be weighed the objection of the defendants that since Regulation 169 was revoked by the Administrator and an amended Regulation concerning the same subject matter was promulgated, effective as of a date later than the dates of some specific overt acts mentioned in the conspiracy indictment, therefore the conspiracy charge must fail, and the substantive counts alleging violation of the revoked Regulation must be deemed no longer to charge a crime for which the defendants are liable to prosecution.

The Court feels amply warranted in declaring these objections to be without force. A conspiracy may exist to violate an existing regulation and continue in force for the purpose of violating regulations on the same subject matter effective subsequent to the original formation of the conspiracy. The situation in the instant case, while not identical with, may be deemed analogous to that existing in the case of United States v. Bryant et al., D.C., 245 F. 682, affirmed, Bryant v. United States, 5 Cir., 257 F. 378; and United States v. Wells, D.C., 262 F. 833.

With respect to the motion that prosecution may no longer be pressed on the substantive counts of the indictments for violation of the revoked Regulation 169, without attempting to cover this objection at length, suffice it to say that it would seem effectively to be disposed of by the United States Supreme Court decision in United States v. Curtiss-Wright Export Co., 299 U. S. 304, 57 S.Ct. 216, 226, 81 L.Ed. 255, where the defendants contended that violations of a Presidential Proclamation authorized by a Joint Resolution of Congress were forgiven by a repealer contained in a Second Proclamation issued under the same authority. The Court in passing on this question, parallel to the one under discussion, said:

"It was not within the power of the President to repeal the Joint Resolution; and his second proclamation did not purport to do so. It 'revoked' the first proclamation; and the question is, did the revocation of the proclamation have the effect of abrogating the resolution or of precluding its enforcement in so far as that involved the prosecution and punishment of offenses committed during the life of the first proc-

lamation? We are of opinion that it did not.

"Prior to the first proclamation, the Joint Resolution was an existing law, but dormant, awaiting the creation of a particular situation to render it active. No action or lack of action on the part of the President could destroy its potentiality. Congress alone could do that. The happening of the designated events—namely, the finding of certain conditions and the proclamation by the President—did not call the law into being It created the occasion for it to function The second proclamation did not put an end to the law or affect what had been done in violation of the law. The effect of the proclamation was simply to remove for the future a condition of affairs which admitted of its exercise."

Furthermore, considered from a practical standpoint, though there is no saving clause in the Amended Regulation, it would seem that a regulation or order, when made, becomes a part of the Act under the provisions of which it is made, and therefore the Statutory Saving provision, 1 U.S.C.A. § 29, would apply.

There occur to the Court no further grounds for objection to the indictments, which require consideration.

In view of the foregoing reasons, the motions made in the cases here considered, whether in the nature of motions to dismiss, pleas in abatement or pleas in bar, and the relief prayed for in the pleas, are denied.