**NATIONAL LABOR RELATIONS BOARD v. CAPE COUNTY MILLING CO.**

No. 12718.

Circuit Court of Appeals, Eighth Circuit.

Feb. 14, 1944.

Charles K. Hackler, Atty. for National Labor Relations Board, of Clayton, Mo. (Alvin J. Rockwell, Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and Jacob I. Karro and Maurice R. Kraines, Attys., all of Washington, D.C., on the brief), for petitioner.

Wallace Cooper, of St. Louis, Mo. (A. M. Spradling, of Cape Girardeau, Mo., on the brief), for respondent.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

The National Labor Relations Board petitions for the enforcement of its order which directs Cape County Milling Company, the respondent, to cease and desist from certain unfair labor practices, to bargain collectively with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America as the exclusive representative of all the employees regularly employed by respondent in driving trucks at its Jackson, Missouri, mills, to offer immediate and full reinstatement to certain named discharged employees to their former or substantially equivalent positions without prejudice to seniority or other rights, to make whole certain discharged employees for any loss of pay suffered by reason of their discriminatory lockout and discharge, to post the notices usual in such circumstances, and to notify the Regional Director what steps respondent has taken to comply with the order. The order issued in a proceeding initiated by the Board's complaint on charges filed by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, which we shall refer to as the union. The complaint charged respondent with the violation of Section 8(1) (3) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158 (1, 3, 5), by interfering with its employees' self organization, by refusing to bargain with its employees' statutory representative, by laying off employees for the purpose of discouraging membership in a labor organization, and by a lockout of employees for the purpose of evading its obligations under said Act. The Board, after hearing, made findings sustaining these charges and entered its order, which it now seeks to have enforced.

The respondent is a Missouri corporation, engaged in milling, processing, selling and distributing flour and feed, at Jackson, Missouri. In the course of its operations it secures large quantities of materials by purchase and transportation in interstate commerce from states outside of the State of Missouri, and it admits that it is engaged in interstate commerce. The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America is a labor organization affiliated with the American Federation of Labor and it admits to membership employees of the respondent regularly engaged in driving trucks.

In opposing the enforcement of the order, respondent contends: (1) That there is no substantial evidence supporting the Board's finding that respondent's action in shutting down its trucking operations was not an abandonment of such operations, but a mere temporary stratagem in order to rid itself of the union; (2) that the shutdown of its over-the-road trucking operations on February 13, 1942, was pursuant to decision made in good faith by respondent's officials; (3) that the Board's order requiring immediate reinstatement of the truck drivers is intended to require respondent to resume a portion of its business abandoned by it, and operates as a penalty and constitutes a remedy unauthorized by law; (4) that the Board's order that the truck drivers laid off with the shutting down of trucking operations on February

13, 1942, and not replaced be paid wages from that date, operates as a penalty and constitutes a remedy unauthorized by law; (5) that the Board's order requiring respondent to bargain collectively with the union is unauthorized in that the respondent has abandoned its over-the-road trucking operations and now has only one truck driver engaged in local delivery, as to whom there is no claim or proof of union membership.

The complaint was filed following a shutdown or abandonment by respondent of its over-the-road trucking operations. Respondent does not challenge here that part of the Board's findings forming the basis of its order requiring respondent to recognize the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America as the sole bargaining agent for its employees engaged in trucking. The Board found that from September, 1941 to March, 1942, respondent warned its employees against membership in the union, questioned its employees about their union activity and advised them to abandon collective action, and threatened to discontinue its trucking operations if its truckers continued to adhere to the union. The Board specifically found that on February 13, 1942, respondent suspended its trucking operations as a temporary expedient to destroy the union and to evade the statutory obligation to bargain collectively. As respondent now challenges only the Board's findings to the effect that it suspended its trucking operations as a temporary expedient and its order requiring reinstatement of its employees severed from their employment by reason of the cessation of trucking operations, we pretermit any detailed consideration of the other issues, except as they may have a bearing upon the issues here presented.

■ The organization of the union local for respondent's truckers began in September, 1941. Respondent attempted to dissuade its employees from joining the union or participating in its activities. Certain employees, as early as September, 1941, were laid off for union activities, and respondent declined to recognize the union as a bargaining agent. Assuming to be the bargaining agent for the truckers, the union, on September 26, 1941, submitted a proposed collective agreement to respondent. Then followed certain negotiations not here important but indicating that respond-

ent was hostile to the union. On January 30, 1942, a meeting between the respondent and the union's representatives was arranged by the Board, and the contract theretofore submitted was considered and rejected by respondent. A further meeting was held February 12, 1942, but respondent declined further to discuss the matter of the proposed contract unless the names of the union members were disclosed. An examiner of the Board who had compared the union's application cards with respondent's pay-roll notified respondent that the check had confirmed the union's claim that it represented a majority of the truckers. At the end of this meeting respondent announced that it was going to discontinue its trucking operations, and on February 13, 1942, it abandoned its direct trucking operations and dismissed its truckers. It contends that its action in this regard was because of the fear that a continued operation of its trucks would result in equipment and tire shortage, and not because of the union activities of its employees, and that its discontinuance of these operations was not "a mere temporary stratagem in order to rid itself of the union." There was evidence which would have sustained this contention of respondent but we do not think it of such a character as to compel such a finding. We do not weigh the evidence and are not a fact-finding body and in the absence of an application by either party for leave to introduce additional evidence our consideration must be limited to the record as certified. There was substantial evidence warranting, we think, the inference that the shutdown was prompted by a desire on the part of respondent to discourage the union activities of its truckers, and the conclusion was one of the inferences which the Board could reasonably have drawn. N. L. R. B. v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305. A discussion of the details of the evidence and the surrounding circumstances which we think sustain the Board in this finding would serve no useful purpose.

■■ This brings us to the appropriateness of the remedy and the authority of the Board to impose it. Confessedly, the Board may ordinarily order the reinstatement of employees who are found to have been discharged because of their union activity or for the purpose of discouraging membership in a union where the employer

is found guilty of an unfair labor practice. N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381; N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L. Ed. 893, 108 A.L.R. 1352. It is equally well established that the Board does not have authority to impose a penalty nor to interfere with the normal exercise of the right of the employer to conduct its business. Republic Steel Corp. v. N. L. R. B., 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6; Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

■■ Had the Board sustained respondent's contention that its abandonment of trucking operations was due to its desire to curtail the consumption of gas or the exhaustion of its equipment, or in contemplation of the shortage of automobile tires and an anticipated rationing of gasoline, there would be much force in its argument that the order requiring reinstatement imposed a penalty and interferes with the normal conduct of its business. The Board, however, found that the shutdown was an expedient resorted to by respondent for the purpose of dislodging the union and evading collective bargaining. As this finding is supported by substantial evidence, we must accept it as a fact. The act was therefore an unfair labor practice and the order to restore the status quo was "adapted to effectuate the policies of the Act." It required respondent to discontinue its lockout of employees, which it found to be discriminatory.

In Williams Motor Co. v. National Labor Relations Board, 8 Cir., 128 F.2d 960, relied on by respondent, we had a somewhat similar situation, with the distinction, however, that the abandoned activity in that case was not temporary, nor was it a device or stratagem to circumvent the provisions of the National Labor Relations Act with reference to recognizing the union as the bargaining agent. The discontinuance of the service department referred to in the Williams case was apparently absolute, and the Board qualified its order of reinstatement by directing that as an alternative to reinstatement, the employer might reinstate the employees to any available position for which they were qualified, or if there were no such positions, might place them on a preferential list for reemployment as soon as such position became available.

The order does not present the question of the propriety of ordering resumption of business operations permanently abandoned. We think the order is not in conflict with the views expressed by us in Williams Motor Company v. National Labor Relations Board, supra. It requires respondent to discontinue an unfair labor practice; to-wit, its discriminatory lockout of employees and its refusal to bargain collectively with their statutory representative. What is said with reference to that part of the order requiring reinstatement of the named employees is equally applicable to that part of the order directing the reimbursement of named employees for any loss of pay suffered by them by reason of their discriminatory lockout and discharge.

■■ It is finally contended that the provision of the Board's order requiring respondent to bargain collectively with the union upon request should not be sustained because the discharged employees are not now employed by it and that it employs but one trucker who is not a member of the union. As the named employees were ousted from their jobs because of an unfair labor practice, they remain employees for the purposes of the Act, Section 2(3) 29 U.S.C.A. § 152(3). An employer is not relieved of its duty to bargain with the statutory agent of its employees by a loss of majority if that loss results from the employer's unfair labor practice. N. L. R. B. v. P. Llorillard Co., 314 U.S. 512, 62 S. Ct. 397, 86 L.Ed. 380.

As the Board here, acting within its power, held a hearing in due course, made findings based upon substantial evidence, and provided an appropriate remedy, the order should be enforced and a decree for such enforcement will accordingly be entered.