BISHOP, J.
 

 Common sense and the authorities join to support the conclusion that a tenant who brings an action against his landlord after he has been repeatedly charged a rental in excess of that fixed by the Office of Price Administration as the maximum which may be demanded, may have judgment for either three times the amount collected in excess of the lawful rate or $50, whichever is the greater sum; that a judgment for as many times $50 as there were overpayments is not authorized.
 

 This appeal is presented to us on a judgment roll which includes formal findings of fact. From the findings it appears that the maximum legal rent that could be charged for the defense-area housing accommodations, which the defendant had rented to the plaintiff under a month to month tenancy, was $19 per month, but that sometime before June 30, 1944, the defendant had demanded of, and received from, the plaintiff the sum of $25 for each of six months. Upon these facts, the trial court entered a judgment awarding plaintiff $300 damages, $60 attorney fee, and costs, and the defendant appealed. We have determined that the judgment should be modified so that the damages awarded equal three times the total of the overcharges, not six times the $50 penalty.
 

 The crucial legal problem presented on this appeal is one of statutory construction. In the Emergency Price Control Act of 1942 (56 Stats. 23, 50 U.S.C.A.App. § 901 et seq.), the Congress provided (§ 205(e) [§ 925(e)]): “If any
 
 *1013
 
 person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney’s fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the ease may be.” The section from which we have just quoted was materially changed in subsection (b) of sec tion 108 of the Stabilization Extension Act of 1944, approved June 30, 1944, but we are of the opinion that the amendment has no effect upon our case. The argument in support of the thought that plaintiff’s right to proceed in the pending action has terminated, is that the redraft of the section worked a repeal of the old, of course by implication, and that with the repeal of the section upon which plaintiff’s right of action depends, his right ends. However,' section 29 of title I, U.S.C.A. (§13, Rev. Stats., U.S.Comp.Stat. 1901, p. 6) guards against this result. It provides: “The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.” The provision made by the “repealing Act” in our case was this: “(c) The amendment made by subsection (b), insofar as it relates to actions by buyers or actions which may be brought by the Administrator only after the buyer has failed to institute an action within thirty days from the occurrence of the violation, shall be applicable only with respect to violations occurring after the date of enactment of this Act. In other cases, such amendment shall be applicable with respect to proceedings pending on the date of enactment of this Act and with respect to proceedings instituted thereafter.” Plainly, plaintiff’s right to continue with this action has not been- terminated -by the redrafting of the section.- ■
 

 As- the Statute involved is federal legislation,' the construction to be placed upon it will ultimately be determined,
 
 *1014
 
 no doubt, by the federal courts.
 
 (Bourdieu
 
 v.
 
 Seaboard Oil Corp.
 
 (1940), 38 Cal.App.2d 11, 19 [100 P.2d 528].) So far as we are aware there is at present no decision by any federal court of appellate jurisdiction that gives a specific answer to the question before us. Indeed, we know of but one appellate court that has passed on our problem. The Connecticut Supreme Court of Errors affirmed, in
 
 Lapinski
 
 v.
 
 Copacino
 
 (1944), 1 Price Control Cases No. 51942, a judgment awarding $350 for seven rent overcharges. This ease does not cause us to doubt the correctness of our conclusion, because the contentions it considered did not raise the question of construction which we find to be important, and the cases and principles which appear to us to be conclusive, it fails to mention.
 

 The general principle to be followed in the construction of section 205 (e) [ § 925 (e) ] is succinctly expressed by the then Mr. Justice Stone in
 
 Haggar Co.
 
 v.
 
 Helvering
 
 (1940), 308 U.S. 389, 394 [60 S.Ct. 337, 84 L.Ed. 340, 344] : “All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose.” In
 
 Bowles
 
 v.
 
 American
 
 Stores,
 
 Inc.
 
 (1943), 139 F.2d 377, the United States Court of Appeals, District of Columbia, in reviewing a judgment where the award was five dollars instead of the amount authorized by section 205(e) [§ 925(e)], took occasion to say this about the purpose of the legislation (p. 379) : “Congress foresaw that the task of enforcing the Act against retailers would be too vast for the Administrator to accomplish without the help of consumers. The plain purpose of the $50 clause is to enlist the help of consumers in discouraging violations. . . . The filing and prosecution of a small suit may or may not cost the plaintiff a substantial amount of money, but any suit takes time and effort. Most people have little time or taste for this sort of effort. Congress made $50 a floor and not a ceiling in order to give overcharged consumers the necessary incentive to sue.” (See, also,
 
 Miller
 
 v.
 
 Municipal Court
 
 (1943), 22 Cal. 2d 818, 838 [142 P.2d 297, 309].)
 

 To interpret the section as authorizing the recovery in one action of as many times $50 as there are overcharges pleaded, would lead to results so absurd that the interpreta
 
 *1015
 
 tion should be avoided unless required by the language of the section. This is not a fanciful speculation. We have one appeal pending before us where a multiple of $50 penalties is sought because of a succession of weekly rents which exceeded the ceiling price by 25 cents each. In another action now on appeal the plaintiff pleads twenty-two purchases in which he was overcharged a total of 34 cents, and prays for twenty-two $50 penalties, a total of $1,100. To interpret the section so as to hold out so great rewards for so minor overcharges would serve to foster in buyers a desire to promote price violations rather than to put a stop to them, with the result that the section would operate to defeat rather than further its purpose. Such an interpretation, obviously, is not to be adopted if it may be avoided without doing violence to the provisions of the section.
 

 The construction which we favor not only does no violence to the terms of the section, but, in the light of decisions dealing with like statutes, is called for by the terms chosen for the section. This idea of inviting the aid of the public in the enforcement of a statute by the award of small sums in addition to compensable damages, is not new. A statute quite similar to that before us gave rise to the case of
 
 Fisher
 
 v.
 
 N. Y. Central etc. Ry. Co.
 
 (1871), 46 N.Y. 644. The evil there sought to be discouraged was the making of a greater charge for railroad fare than that allowed by law. As stated in the opinion (p. 655), the statute provided that “any railroad company which shall ask and receive a greater rate of fare than that allowed by law, shall forfeit fifty dollars, which sum may be recovered, together with the excess so received, by the party paying the same.” The plaintiff on twenty-six occasions was asked and paid a fare of 34 cents, which was more than the legal fare, and he obtained a judgment for $1,376.48, made up mostly of $50 for each of the twenty-six payments. After commenting upon the fact that the law prohibiting overcharges had, before the adoption of the law in question, been inadequately enforced, because the amounts involved were too small to justify the expense of private actions, the New York Court of Appeals stated (pp. 657, 658, 659): “To remedy this, the statute was passed giving the fifty dollars to the party paying the money, not as a satisfaction for the injury received, for that was otherwise compensated; but to enable him to prosecute in a court
 
 *1016
 
 of record, when he could recover the compensation of his attorney as costs, and to compensate for any further expense that might be incurred in the suit, and to compel the payment of such a sum by the defendant as would effectually stop the practice. To effectuate this intent, the language of the statute was chosen with care; which sum, etc., may be recovered, omitting the words, ‘for each and every offence, found in various penal statutes, showing clearly that the legislature did not intend to open a door to a practice adopted in a ease originating in another part of the State ... of opening a book account of penalties earned, and delaying suit for a year, when such penalties amounted to between $20,000 and $30,000. A construction permitting this would defeat the intention of the legislature, which was to suppress the extortion by prompt prosecutions, by enabling parties to forbear suing until the aggregate of penalties amounted to a large sum, and induce others to do as one .of the plaintiffs in one of the cases now in judgment was honest enough to testify he did; that was to abandon other business and spend his time for a considerable period in riding back and forth from Tonawanda to Buffalo for the purpose of earning penalties .... My conclusion is, that but one penalty can be recovered upon the statute under consideration, for all acts committed prior to the commencement of the action. If, after this, it is again violated, another may be recovered in another action commenced thereafter, and so on, as long as violations continue. This will not only tend to put a stop at once to the extortion, when it is committed knowingly by the defendant, but where it is done under a mistake as to its rights, will give it notice that its right to charge the amount claimed is challenged, and will induce a cautious examination of the question, and an abandonment of the claim before a ruinous amount of penalties have been incurred. ’ ’
 

 , A like conclusion was reached in
 
 Griffin
 
 v.
 
 Interurban St. Ry. Co.
 
 (1904), 179 N.Y. 438 [72 N.E. 513], where this sanction had been provided to aid in the enforcement of a law which required the giving of a transfer upon request: “For every refusal to comply with the requirements' of this section the corporation so refusing shall forfeit fifty dollars to the aggrieved party.” Four times $50 was sought because on four occasions a transfer had been refused when requested. These brief quotations from the decision suffice to reveal the
 
 *1017
 
 court’s view (p. 449 of 179 N.Y.; p. 517 of 72 N.E.): ‘ There have been presented at the bar of this court, civil and criminal cases where the aggregate penalties sought to be recovered have amounted to enormous and well-nigh appalling sums by reason of plaintiffs permitting a long period to elapse before beginning actions. Actions of this nature have become highly speculative and present a phase of litigation that ought not to be encouraged. The court is of opinion that if cumulative recoveries are to be permitted, the legislature should state its intention in so many words; that a more definite form of statement be substituted for the words hitherto deemed sufficient. We intend no reflection upon the plaintiffs in the cases now under consideration, but are dealing with a great abuse which demands immediate correction. A sound public policy requires that only one penalty should be recovered in a single action, and that the institution of an action for a penalty is to be regarded as a waiver of all previous penalties incurred. It follows that, in each of the actions before us, the judgment should be modified and reduced so as to permit a recovery for one penalty only, without costs to either party.”
 

 In the State of Tennessee a statute provides a penalty of $100 for the failure of a railroad, during any trip of its passenger cars, to announce the length of each stop and the name of the stopping place. The plaintiff charged that the defendant had failed to comply with the statute when it made a stop at Paducah junction, on two hundred and forty trips, and prayed for the wealth he saw coming to him from the' defendant’s repeated derelictions. The Tennessee Supreme Court disappointed him by declaring in
 
 Parks
 
 v.
 
 Nas
 
 hv
 
 ille etc. Ry.
 
 (1884), 13 Lea 1, 6, 7, 8 [49 Am.Rep. 655] : “ . . . the statute does not say that there shall be a penalty for ‘each and every offense.’ In the absence of these words, it seems to be settled that only one recovery can be had for acts or omissions, in violation of the statute, prior to the commencement of the suit: 5 Wait’s Act and Def., 164. The reason is, that it is the action which will bring the default to the attention of the corporation or party, and secure a compliance with the law. And it is the performance of the duties imposed which inures to the benefit of the passengers, on whose behalf the act was passed. A different construction would contravene the legislative intent, leave an
 
 *1018
 
 opening for the perversion of the act, and make a statute punitive which was intended to he remedial. ... To allow a person to open a book account of penalties at an insignificant way .station, and run up a charge of $24,000 for the failure of the conductor to announce the station, or the length of stay, of which no passenger has complained, would shock the conscience, pervert the intention of the Legislature, and turn a remedial into a highly punitive statute. It would be a literal construction of the words of the statute, which would recall the similar construction by a somewhat famous judicial tribunal of the middle ages of a . law making it a capital offense to shed blood in the street, whereby an unfortunate leech was condemned to the gallows for bleeding his apoplectic patient on the side walk where he had dropped down. If the Legislature had, in the act before us, in so many words authorized what the plaintiff has done, without any notice to the company, it "would be difficult to sustain the constitutionality of the statute. For the effect would be the imposition of an excessive fine: Const., Art. 1, sec. 16. But the Legislature had no such intention, and we shall not press the language used so as to do indirectly what could not, perhaps, have been done directly. The statute, both upon reason and authority, admits of a different construction. We are of opinion, therefore, that only one penalty can be recovered up to the bringing of the suit.”
 

 In our own state the Legislature sought, in 1880, to secure from each board of directors of mining companies a monthly balance sheet, by authorizing an action against the directors by a stockholder for liquidated damages of $1,000, in case they failed to make the report. In
 
 Loveland
 
 v.
 
 Garner
 
 (1887), 71 Cal. 541 [12 P. 616], the plaintiff endeavored to obtain a judgment for $7,000 because the defendants, for seven separate months, had failed to furnish the required balance sheets. The gist of the court’s decision is found in these sentences (p. 543) : “It will be perceived that this act is in its nature penal, and does not specifically declare that for
 
 each
 
 failure to comply with its requirements a penalty may be recovered. Nor does it declare that each refusal or neglect of that kind shall render the directors liable for a penalty. It would therefore seem that under its provisions the stockholder or stockholders might, at their election, either proceed against the directors for a single delinquency, or might forbear to do so until more than one dereliction of
 
 *1019
 
 duty on the part of their trustees (so to speak) had occurred; but in neither event could more than one penalty be recovered.” (See also
 
 Schofield
 
 v.
 
 Doray
 
 (1891), 89 Cal. 55, 57 [26 P. 606].)
 

 The cases we have reviewed are not recent, but their sound sense still gives them validity, and gives emphasis to the omission of the words “each and every” from our statute. In the first three of these cases, particularly, there was an endeavor to bring about the enforcement of laws passed for the benefit of large numbers of the public by giving the public some inducement to assist in their enforcement. The danger of a construction which made a racket out of law enforcement, rather than a means to it, was seen as real, not just an argument without the validity of experience. One “penalty” only was held to be provided for, in the absence of express words indicating a clear legislative intent that they should be cumulative. It is our conclusion, then, that the Congress did not intend, in the section which applies to the case before us, to authorize an overcharged customer or tenant to bring an action for more than $50 except in the event that the triple amount of the overcharge exceeded $50, in which case the judgment should be for three times the amount unlawfully exacted.
 

 In the case before us, in each of six months, $6 was demanded and received over the established rent ceiling, a total of $36. The judgment of the trial court is, therefore, modified by striking the figure “300.00” from between the dollar sign and the word “damages” and inserting in lieu thereof the figure “108.00.” It is further modified by reducing the sum allowed as attorney fees from $60 to $50. As so modified, the judgment is affirmed, appellant to have her costs of appeal.
 

 Shaw, P. J., and Kincaid, J. pro tern., concurred.