NATIONAL LABOR RELATIONS BOARD
v. NATIONAL GARMENT CO. et al.
No. 13570.

Circuit Court of Appeals, Eighth Circuit.
Jan. 7, 1948.

Rehearing Denied Feb. 5, 1948.

Charles K. Hackler, Atty., National Labor Relations Board, of St. Louis, Mo. (David P. Findling, Associate Gen. Counsel, Ruth Weyand, Acting Asst. Gen. Counsel, Fannie M. Boyls and Frederick D. Vincent, Jr., Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Victor Packman, of St. Louis, Mo., for respondent.

Before SANBORN, WOODROUGH, and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

This case is before the court on petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., for enforcement of its order issued against respondents on August 6, 1946 (69 N.L.R.B. 1208). The petition was filed in this court in May 1947, some three months prior to August 22, 1947, the effective date of the Act to amend the National Labor Relations Act. The answers of respondents to the petition were filed here in June 1947 and the brief of the Board was filed in October, 1947.

The proceedings before the Board culminating in the issuance of the order now before the court were initiated by the filing of charges on March 3, 1945, by the International Ladies Garment Workers Union, AFL, herein called the union, alleging that respondent National Garment Company, herein called National, at its Wellsville, Missouri, plant had engaged in certain

acts violative of Section 8(1) and (3) of the Act. On July 12, 1945, National leased this entire plant and equipment to Wells-Wear Company, herein called Wells-Wear, which continued operation of the plant without change in personnel or in manner of doing business. Thereafter, on August 17, 1945, the union filed a first amended charge with the Board alleging that National and Wells-Wear had engaged in unfair labor practices within the meaning of Section 8(1), (3) and (5) of the Act. After the usual proceedings under Section 10 of the Act, in which both National and Wells-Wear fully participated, the Board issued its decision and order, which may be summarized briefly as follows:

1. The applicability of the Act to respondents' operations.—The respondent National is a Missouri corporation engaged in the manufacture of wearing apparel, chiefly boys' shirts. At the time of the occurrences hereinafter discussed, it operated plants in St. Louis and Chaffee, as well as in Wellsville, Missouri, where the unfair labor practices occurred. Material cut at National's St. Louis plant was sent to the Wellsville plant for assembly and thence returned to the St. Louis plant where it was commingled with other merchandise for sale and distribution. During 1944, National purchased raw materials of a value greater than $80,000, more than 90 percent of which was received from points outside the State of Missouri. During the same period, National manufactured finished products of a value greater than $100,000, more than 50 per cent of which was shipped through intermediary Missouri wholesale companies to points outside the state. During 1945 up to the date of the hearing in September about 50 per cent of the raw materials purchased by National came from outside the state and a substantial amount of its total sales of about $750,000 was shipped outside the state. As in 1944, the sales were made to Missouri wholesale firms which distributed the merchandise, commingled with merchandise from other sources, to customers both inside and outside the state.

On July 5, 1945, respondent Wells-Wear, also a Missouri corporation, commenced operating National's Wellsville plant. The plant's function in the integrated scheme of production by National did not change. Wells-Wear continued to operate as a processing plant for material received from National's St. Louis plant. At the time of the hearing Wells-Wear had not engaged in production for any concern except National. Upon these facts, which were undisputed, the Board concluded that the operations of both National and Wells-Wear affected commerce within the meaning of the Act.

2. The unfair labor practices.—The Board found that National, by threatening and coercive speeches to its employees, by inquiries into their organizational activities and the procuring of affidavits from them in regard to such activities, and by the lay-off of its Wellsville employees, interfered with, restrained, and coerced its employees and discriminated against them within the meaning of Section 8(1) and (3) of the Act. It found also that by refusing to bargain with the union as the representative of the employees at Wellsville within an appropriate bargaining unit, National violated Section 8(5) and (1) of the Act.

The Board further found that Wells-Wear, which succeeded to and continued to operate the Wellsville plant with the same management and personnel and as a branch or adjunct to National, must necessarily be regarded as identical and inseparable from National for the purpose of safeguarding the statutory rights of the Wellsville employees; and that by refusing to bargain with the union, and by otherwise failing to remedy the unfair labor practices commenced by National, Wells-Wear engaged in unfair labor practices within the meaning of Section 8(1) (3) and (5) of the Act.

3. The Board's order.—The Board ordered National and its officers, agents, successors, and assigns to make whole the employees whom it had discriminatorily laid off for any loss in pay suffered by them as a result of the lay-off; and ordered both National and Wells-Wear and their officers, agents, successors, and assigns to cease and desist from the unfair labor

practices found; upon demand, to bargain collectively with the union; upon application of employee Abbie Ruth Cobb, to reinstate her, and if they refuse to reinstate her, to make her whole for loss of wages which she may suffer as the result of such refusal; and to post appropriate notices.

After the Board filed its petition in this court for the enforcement of its order against respondents, respondents petitioned this court for leave to adduce additional evidence for the purpose of showing that the operation of National's Wellsville plant had again changed hands, that this time the plant was leased by National to and was being operated by persons unconnected with respondents and that consequently parts of the Board's order were unenforceable. The Board opposed respondents' motion to adduce such additional evidence and this court, on June 23, 1947, after oral argument of the parties, denied the motion.

The respondents resist the enforcement of the Board's order on the grounds: (1) That the 1947 amendments to the National Labor Relations Act have voided all those orders of the Board, including the order here in question, which were rendered but not enforced prior to the effective date of the amending Act; (2) that the changes in ownership which have occurred in respect to the plant at Wellsville since the occurrence there of unfair labor practices found by the Board render the order moot and compliance impossible; (3) that the finding of violation of Section 8(3) is not supported by evidence; (4) because the order for back pay to be made to the employees (with one exception) was not coupled with an order for the reinstatement of the employees (as to the one exception, Abbie Ruth Cobb, it is contended that there was

no evidence to support the Board's order); (5) because the order does not contain findings that it is to effectuate the policies of the Act; (6) because the order is void for vagueness, uncertainty and lack of specificity.

1. Effect of 1947 Amendments.

Section 3(a) of the Act, effective August 22, 1947, 29 U.S.C.A. § 153(a), provides that "the National Labor Relations Board (hereinafter called the 'Board') created by this Act prior to its amendment by the Labor Management Relations Act, 1947, is continued as an agency of the United States, except that the Board shall consist of five instead of three members, * * *" and on October 24th of this year the Board, constituted as required by the amending Act, was confronted in the case of Marshall and Bruce Company, etc., No. 10–C–1792, with the question as to the effect if any of the amendatory legislation on the Board's power to adjudicate unfair labor practice controversies which arose prior thereto. The Board stated:

"In our opinion, this question is authoritatively answered in the general savings statute enacted by Congress in 1871, which sets forth 'Rules for the Construction' of amendatory and repealing legislation.[2] This statute provides as follows:

" 'The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.'[3]

"The general savings statute is now Section 29 of Title I of the United States Code [1 U.S.C.A. § 29], a title promulgating rules

---

"[2] Act of February 25, 1871, 16 Stat. 431, 1 U.S.C.A. § 29. This statute changed the then existing federal common law rule that the repeal of a prior statute had the effect of extinguishing all liabilities thereunder. See United States v. Tynen, 11 Wall. 88, 95, 20 L.Ed. 153.

"[3] On March 22, 1944, Congress amended this statute to add the following sentence, c. 123, 58 Stat. 118, 1 U.S.C.A. § 29: 'The expiration of a temporary stat-

ute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.'

applicable to all federal statutes, and is therefore generally applicable to the legislation here under consideration.

 "The term 'liability' as used in the general savings statute has been broadly construed by the courts to comprehend all obligations arising out of any breach of a statutory duty.[4] The obligations of employers arising out of violations of the National Labor Relations Act are clearly 'liabilities' within the meaning of the general savings statute, as it has been consistently interpreted. Under that statute such liabilities continue to have binding effect, notwithstanding the passage of the amendment, unless Congress manifested therein an intention to extinguish such liability.[5] But clearly Congress made no provision in the amendment for absolving employers of liability for unfair labor practices committed prior to such amendment. Indeed, the legislative history indicates a contrary intent, for Congress expressly considered and rejected a proposal which would have had the effect of prohibiting entry by the Board or enforcement by the courts of any order based on prior unfair labor practices unless the conduct involved continued to be an unfair labor practice under the amending statute.[6] To this extent there-

fore, the new law does not operate retroactively.

"In view of the foregoing, we are of the opinion that the general savings statute must be held to preserve 'all liabilities' arising under the National Labor Relations Act prior to amendment. Accordingly, the Board unanimously concludes and finds as a matter of law that the enactment of the recent amendments does not impair our power to adjudicate the present case, or any other case which may have arisen prior to such amendments, and to issue an appropriate order therein."

We do not disagree with the quoted conclusions of the Board.

Comparison of the provisions of the old Act with those of the 1947 Amendments has convinced that nothing in the Labor Management Relations Act has deprived this court of its jurisdiction in this case over "the proceeding and of the question determined therein" or of its "power * * * to grant relief * * * and enter decree enforcing in whole or in part * * * the order of the Board."

 The Board has heard and made its determination upon charges of breaches of statutory duty by respondents, prescribed the resultant obligations of respond-

"[4] The term has been interpreted to include 'liability to be imprisoned' arising out of a violation of a criminal statute (United States v. Reisinger, 128 U.S. 398, 403, 9 S.Ct. 99, 32 L.Ed. 480); liability to pay inheritance taxes resulting from the death of the testator prior to repeal of the tax law (Hertz v. Woodman, 218 U.S. 205, 218, 30 S.Ct. 621, 54 L.Ed. 1001); liability after repeal of the Eighteenth Amendment to pay tax on alcohol diverted to beverage purposes imposed in the Revenue Act of 1926 (United States v. United States Industrial Alcohol Co., D.C.Md., 8 F.Supp. 179); 'liability' of a creditor who had received property from his debtor under circumstances constituting an unlawful preference under the Bankruptcy Act, to refund it to the Assignee of the debtor in bankruptcy (Tinker v. Van Dyke, C. C.Mich., 1876, Fed.Cas.No.14,058; and 'liability' to forfeiture of imported goods knowingly entered by means of a false invoice (United States v. Four Cases of Lastings, D.C.N.Y., 1879, Fed.Cas.No. 15,145. See also Warren v. Garber, C. C.Va., 1877, Fed.Cas.No.17,196; Brad-

bury v. Galloway, D.C.Cal., 1877, Fed. Cas.No.1,764; De Four v. United States, 9 Cir., 260 F. 596, 599, certiorari denied, 253 U.S. 487, 40 S.Ct. 485, 64 L. Ed. 1026; Goublin v. United States, 9 Cir., 261 F. 5; Lang v. United States, 7 Cir., 133 F. 201; United States v. Krupnick, D.C.N.J., 51 F.Supp. 982, 989; United States v. Auerbach, D.C.Cal., 68 F.Supp. 776–778–780; Peters v. Felber, 66 Cal.App.2d Supp. 1011, 1012, 1013, 152 P.2d 42.

"[5] See Great Northern Ry. Co. v. United States, 208 U.S. 452, 465, 28 S.Ct. 313, 52 L.Ed. 567; United States v. Chicago, St. P., M. & O. Ry. Co., D.C., 151 F. 84, 93, 94, affirmed 8 Cir., 162 F. 835, certiorari denied, 212 U.S. 579, 29 S.Ct. 689, 53 L.Ed. 659; Lang v. United States, 7 Cir., 133 F. 201, 206, 207; Ex parte Lamar, 2 Cir., 274 F. 160, 172, affirmed per curiam 260 U.S. 711, 43 S.Ct. 251, 67 L.Ed. 476; Maceo v. United States, 5 Cir., 46 F.2d 788, 789.

"[6] See Section 102(c) of the H. R. 3020, 80th Congress 1st Sess.; Conf. Report p. 61, House Report No. 510, 80th Congress 1st Session."

ents and fixed the liability incurred by respondents under the old Act to the extent of its powers. The obligations imposed upon respondents by the Board's order are "liabilities" within the meaning of the general saving statute, 1 U.S.C.A. § 29, and Congress manifested no intention in the amendments to release or extinguish any such obligations. They continue therefore to have binding effect upon respondents subject to the jurisdiction of this court to grant or deny enforcement of the Board's order. Insofar as Congress amended certain procedural provisions of the Act it reflected no intention to reach back and nullify procedural steps already taken. Those steps already taken, pleadings, and all things done under the old law must stand. Procedural changes operate in the future.

## 2. The Changes in Ownership.

Although the charges of unfair labor practices in this case were first made against respondent National Garment Company alone, respondent Wells-Wear was included by amended charges before the case was brought on for hearing and the evidence supports the Board's finding that:

"Under all the circumstances, particularly the unified and integrated nature of the operations conducted by National and Wells-Wear and the common control of Rothbarth over the labor policies of both respondents, we are convinced and find that National is in a position to, and does virtually control, Wells-Wear; that Wells-Wear functions in effect merely as a branch or adjunct to National; that National, Wells-Wear and Rothbarth are joint employers at the Wellsville plant, within the meaning of Section 2(2) of the Act; and that both corporate entities (National and Wells-Wear) must necessarily be regarded as identical and inseparable for the purpose of safeguarding the statutory rights of the employees at the Wellsville plant. We further find that Wells-Wear, as well as National, is responsible for the unfair labor practices committed at the Wellsville plant and that to effectuate the policies of the Act it is necessary for both respondents to remedy such unfair labor practices."

 The Board's direction of its order to both respondents is in accord with this court's decision in N. L. R. B. v. Adel Clay Products Co., 8 Cir., 134 F.2d 342. The contentions of respondents that further changes in the ownership of the Wellsville plant occurring since the issuance of the Board's order have rendered this case moot and their compliance with the order impossible are not considered in this opinion. The duty of this court to rule and act upon applications of the Board for enforcement orders must be discharged, notwithstanding the rights which plant owning employers have to divest themselves of their relationship to the properties. Our refusal to remand the case to the Board to take additional evidence was in the exercise of discretion and the Board's petition for enforcement is ruled on in this opinion as of the date of issuance of the order.

## 3. The Sufficiency of the Evidence.

 The findings of the Board that respondents engaged in unfair labor practices within the meaning of Section 8(1) (3) and (5) of the Act are supported by substantial evidence in that there was such evidence that they laid off the employees and coerced, threatened and intimidated them to hinder and prevent them from acting collectively in labor union organization. The contention of respondents that they did not discriminate against the employees because they laid off all employees, both union and non-union, may not be sustained. They discriminated against all employees by treating them differently than they would have treated them had some of them not joined the union within the plain intendment of Sections 7 and 8(1) (3), "It shall be an unfair labor practice for an employer * * * to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [of self organization in labor unions] (3) by discrimination in regard to * * * tenure of employment." N. L. R. B. v. Cape County Milling Co., 8 Cir., 140 F.2d 543, 152 A.L.R. 144; N. L. R. B. v. Somerset Shoe Co., 1 Cir., 111 F.2d 681; N. L. R. B. v. National Motor Bearing Co., 9 Cir., 105 F.2d. 652, 657, 658.

## 4. Back Pay Without Reinstatement.

 The respondents contend that the back pay ordered by the Board may not

be enforced because the workers resumed their employment before the case came to the Board and therefore no order for their reinstatement was coupled with the back pay order. They cite N. L. R. B. v. Carlisle Lumber Co., 9 Cir., 99 F.2d 533. This court ruled contrary to the contention long after the decision in the Carlisle Lumber Co. case, in N. L. R. B. v. Skinner & Kennedy Stationery Co., 8 Cir., 113 F.2d 667, 669, and we think our ruling is in accord with Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 197–200, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217, and N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368. The contention is not sustained. As to the employee Abbie Ruth Cobb, we find the order of the Board is sustained by the evidence.

## 5. Findings as to Effectuating the Policies of the Act.

██ On this point respondents cite and rely on Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 196, 200, 61 S.Ct. 845, 853, 85 L.Ed. 1271, 133 A.L.R. 1217, where it appeared to the court that the Board has "determined only the dry legal question of its power, which we sustain; it did not consider whether in employing that power the policies of the Act would be enforced," but examination of the Board's decision and order here disclose no analogous situation. Here the Board declared that: "we are convinced that the policies of the Act can only be effectuated by requiring Wells-Wear as well as National to remedy the unfair labor practices found to exist at the Wellsville plant"; "Upon the entire record in the case, and pursuant to Section 10(c) of the National Labor Relations Act, the National Labor Relations Board hereby orders"; "the respondents * * * their officers, agents, successors and assigns, shall take the following affirmative action which the Board finds will effectuate the

policies of the Act"; and from the context considered with the declarations it is clear that the Board's order was based on its determination that the order would effectuate the policies of the Act.

## 6. The Certainty of the Order.

██ The record before us does not show on its face that any of the things ordered or forbidden are insufficiently defined or incapable of performance and the order is in the form sanctioned by long usage. It is sustained as to form. Examination of the whole record has convinced that the evidence presented to the Board an unusual clear instance of infringement on the part of the employer of the requirements of the Act in respect to the right of his employees to self organization and refusal to bargain and that enforcement should be ordered as prayed.

Enforcement ordered.

On Petition for Rehearing and Objections of Respondents to Proposed Decree.

## PER CURIAM.

This court has determined that the order of the National Labor Relations Board, under review, was a valid order and that the Board is entitled to have it enforced. A proposed decree has been submitted. The respondents assert that much of the Board's order, because of changed conditions, is unenforceable, and apparently believe that this court, before entering a decree, must ascertain to what extent the respondents will be able to comply with the order. Obviously, the respondents cannot be compelled to do the impossible. It is our opinion, however, that it will be for the Board initially to determine how far compliance reasonably can be exacted under present conditions.

The petition for rehearing is denied, and the objections to the proposed decree are overruled.