**J. G. ROY & SONS COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD,** Respondent.

No. 5282.

United States Court of Appeals
First Circuit.

Jan. 27, 1958.

Lawrence M. Kearns, Boston, Mass., with whom Arthur M. Marshall, Springfield, Mass., and Morgan, Brown & Kearns, Boston, Mass., were on brief, for petitioner.

Norton J. Come, Attorney, Washington, D. C., with whom Jerome D. Fenton, General Counsel, Stephen Leonard, Associate General Counsel, and Marcel Mallet-Prevost, Asst. General Counsel, Washington, D. C., were on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition for review under Section 10(f) of the National Labor Relations Act, as amended (61 Stat. 148

(1947), 29 U.S.C.A. § 160(f)) filed by J. G. Roy and Sons Company (hereinafter called Roy Construction) of an order of the National Labor Relations Board. This order dismissed Roy Construction's complaint charging the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, Carpenters' District Council of Springfield, Massachusetts, AFL-CIO (both hereinafter referred to as the Union) and their agents with having violated Section 8(b) (4) (A) and (B) of the National Labor Relations Act.[1]

The alleged unfair labor practices arose from a strike called by the Union which resulted in the withdrawal of its members from the site of the Chicopee Housing Project where they had been employed by the petitioner, Roy Construction. The Union's agent told George Roy, president of Roy Construction, that the strike was called because Roy Construction was using non-union lumber in violation of its contract with the Union and because Roy Construction had continued to purchase this non-union lumber from J. G. Roy Lumber Company (hereinafter called Roy Lumber).

The main issue before us is whether the Board was correct in deciding that Roy Construction was so allied with Roy Lumber that Roy Construction could not be classified as a neutral employer wholly unconcerned in the dispute between the Union and Roy Lumber and, therefore, not coming within the Congressional purpose in Sec. 8(b) (4) (A) and (B) of protecting innocent third party employers in a labor dispute.

Roy Construction is a Massachusetts corporation with its offices in Springfield, Massachusetts, the stock of which is owned in equal shares by the five Roy brothers, George, Joseph, Edmund, Fred and Leo. The five brothers also constitute the board of directors of this corporation, of which Joseph is president and George is treasurer and clerk. Roy Lumber, which is a Massachusetts corporation engaged in the sale and distribution of lumber and building supplies and has its offices in Chicopee, Massachusetts, about three miles from the offices of Roy Construction, is also owned in equal shares by the five brothers except for two of the 497 shares of outstanding stock which are owned by Roy Construction. Edmund Roy is president of Roy Lumber and Fred is treasurer and clerk, and the board of directors consists of Joseph, George, Edmund and Fred.

It was stipulated that each brother has received the same total amount of income from these two corporations and from two other corporations not involved in this case in each of the past five years although each brother did not receive the same compensation from each company.

However, despite this common ownership and the division of total profits from all the Roy enterprises equally among the brothers, the Board concedes that there appears to be no substantial evidence of past interference by the officers of one corporation in the affairs of the other. There was no evidence that the

---

1. "§ 8. *Unfair labor practices.*

　　*　　*　　*　　*　　*

"(b) It shall be an unfair labor practice for a labor organization or its agents—

　　*　　*　　*　　*　　*

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; (B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9 of this title; * * *."

annual directors' meetings were other than the perfunctory ones required by state law. The instances of inter-relations between the actual operations of Roy Lumber and Roy Construction were inconsequential. The trial examiner found that the companies had separate offices and records; that they had no supervisors or employees in common; that they did not transfer personnel from one to the other and each did its own hiring and firing. He expressly found that their labor relations policies were formulated independently. Other relevant findings made were that Roy Construction purchased only about 5% of Roy Lumber's annual sales and that while Roy Construction annually purchased about $400,000 worth of building materials of the type sold by Roy Lumber, only about $85,000 worth was purchased from Roy Lumber. In 1955 Roy Lumber's total sales amounted to over $1,700,000 and Roy Construction's total purchases to almost $1,350,000.

It was found that Roy Construction purchased all its millwork requirements from Roy Lumber but there was no evidence presented to refute the petitioner's explanation that Roy Lumber was the only available supplier of suitable millwork in the area.

From the above evidence the trial examiner concluded that Roy Construction was not an innocent neutral third party so as to be entitled to the protection of § 8(b) (4) (A) and (B). The Board, with one member entering a vigorous dissent, upheld the trial examiner's finding that Roy Construction was not a neutral or wholly unconcerned employer, stating first that Roy Lumber and Roy Construction were engaged in a "straight line operation" in that Roy Lumber was Roy Construction's sole source of supply of millwork lumber and, secondly, the businesses of the primary employer, Roy Lumber, and the secondary employer, Roy Construction, were commonly owned and controlled "as set forth in the Intermediate Report."

■ The Board's "straight line operation" doctrine is derived from its own decision in National Union of Marine Cooks and Stewards (Irwin-Lyons Lumber Co.), 87 N.L.R.B. 54 (1949). In that case the primary employer was engaged in logging operations while the secondary employer transported all of the logs from the primary employer's logging site to its sawmill. Both employers were commonly owned, and, unlike the instant case, the president and active operating head of both companies was the same man. The secondary employer's operations were an absolutely essential and integral part of the primary employer's enterprise. In contrast to this, Roy Construction's purchases of millwork from Roy Lumber constitute a very small part of the total sales and purchases of both companies and were not part of a "unified production effort." To characterize the Roy Construction and Roy Lumber Companies as a "straight line operation" because of this purchase of millwork would be a strained interpretation of the facts in order that they might fit within the doctrine adopted by the Board in the Irwin-Lyons case. See Alpert v. United Brotherhood of Carpenters, etc., D.C.Mass.1956, 143 F.Supp. 371 (wherein a temporary injunction was granted against the Union upon request of the regional director of the Board under authority of Sec. 10(1) of the Act in earlier proceedings in this case).

■ The Board's second basis for designating the petitioner as an "ally" of Roy Lumber is derived from the finding of common ownership and control "as set forth in the Intermediate Report." Yet an examination of the Intermediate Report reveals that while common ownership was admitted, it was specifically found that there was no actual common control over labor policies or any other phase of the operations of Roy Lumber and Roy Construction. There was of course potential common control, but this is always possible where there is common ownership. The Board itself recognized that there must be more than the potential control inherent in common ownership for it specifically stated that common

ownership *and* control were necessary in this case to establish an ally relationship. There was entirely lacking here any substantial evidence of actual common control and, therefore, the Board was in error in relying on this ground when it denied the petitioner the protection of § 8(b) (4) (A) and (B).

An analysis of the citations relied upon by the Board in support of its contention that two separate corporate entities may be regarded as one employer fully supports our conclusion that such a finding in the instant case is unwarranted. In National Labor Relations Board v. Stowe Spinning Co., 1949, 336 U.S. 226, 69 S.Ct. 541, 93 L.Ed. 638, the hall, which the four corporations unfairly refused the use of to the union for organizational purposes, was owned by those corporations jointly and was managed by an agent of the four corporations. See National Labor Relations Board v. Stowe Spinning Co., 4 Cir., 1947, 165 F.2d 609, 610, reversed supra. It was clear that each of these four corporations had the same labor policy and they were as one enterprise, especially with regard to the hall which was the subject of the unfair labor practice. In National Labor Relations Board v. Condenser Corp., 3 Cir., 1942, 128 F.2d 67, one employer was the wholly owned subsidiary of the other from whom it purchased materials at cost, which were later sold back again after certain manufacturing operations also at cost. The court held that what was important was the " * * * degree of control over the labor relations in issue * * * ", supra at page 71. Similarly in National Labor Relations Board v. Somerset Classics, 2 Cir., 1952, 193 F.2d 613, certiorari denied sub nom. Modern Manufacturing Co., Inc., v. National Labor Relations Board, 344 U.S. 816, 73 S.Ct. 10, 97 L.Ed. 635, while the two corporations were owned and controlled by members of the same family, there was the additional evidence that one corporation was entirely dependent upon the other corporation for its work, the operations of both companies were closely integrated

and the same individual was managing both companies during the period when the unfair labor practice occurred. These elements of common management, integrated operations and complete dependence by one company upon the other for its work were also present in National Labor Relations Board v. National Garment Co., 8 Cir., 1948, 166 F.2d 233, certiorari denied 334 U.S. 845, 68 S.Ct. 1513, 92 L.Ed. 1768. In National Labor Relations Board v. Federal Engineering Co., 6 Cir., 1946, 153 F.2d 233, there was abundant evidence that the two legal entities, a corporation and partnership, were engaged in one enterprise. Three of the four partners were top officials of the corporation, which owned the plant where the common enterprise was conducted and whose affairs were interrelated and intertwined with those of the partnership. The court in National Labor Relations Board v. New Madrid Mfg. Co., 8 Cir., 1954, 215 F.2d 908, held that a dress manufacturer could not be held responsible for the unfair labor practices of one of its former managers who had purchased certain of its machinery under a conditional sales agreement containing besides conventional creditor-protecting, default-and-insecurity provisions, certain clauses prohibiting the purchaser from withdrawing more than a certain sum monthly while the debt was unpaid and from taking on any manufacturing work for other dress manufacturers without the seller's consent. There was dicta in that opinion that the possession of any power or right of control by one employer over another would cause them to be regarded as one employer. It could be contended that common ownership necessarily results in common right of control even though that right is never exercised. However, in the New Madrid case, the court was faced with an integrated straight line operation and it was within this context that the above principle was stated. In the instant case where there is no substantial evidence of integrated operations, the mere existence of common ownership of the stock of the

two corporations will not justify the withholding of the protection of § 8(a) (4) (A) and (B).

This situation must be distinguished from those cases where the courts have held that a secondary employer performing "struck work" for the primary employer was not protected by the Act. See National Labor Relations Bd. v. Business Mach. & Office A, etc., 2 Cir., 1955, 228 F.2d 553, certiorari denied 1956, 351 U.S. 962, 76 S.Ct. 1025, 100 L.Ed. 1483. In such cases the employees of the primary employer, if prevented from inducing the employees of the secondary employer to cease working on "farmed out struck work" would be at a considerable disadvantage in conducting their dispute with their employer.

In the instant case the ultimate object of the Union in refusing to work on non-union lumber was to force Roy Lumber to recognize the Union as bargaining representative for its employees. However, there does not appear to have been any attempt by the Union to organize the Roy Lumber employees directly. Instead the Union sought recognition directly from the employer, Roy Lumber, despite there being no evidence of the Union having received authorization from any of Roy Lumber's employees. It would be well to quote the language of Member Rodgers of the Board in his dissent, who said: "* * * In this case the employees of Roy Construction have been made the victims of a dispute that does not concern them at all and in which their own interests are in no way involved. They have been induced to strike not for the purpose of achieving any legitimate union demand but of forcing Roy Lumber to violate the Act by imposing a collective bargaining representative on its employees, regardless of their own wishes and rights. It would seem then that this Board should seek to prevent such conduct rather than to reach for an interpretation of the Act which permits and encourages it."

A decree will be entered setting aside the order of the Board of June 24, 1957, and remanding the case to that Board for further proceedings consistent with this opinion.