BACHMAN MACHINE COMPANY, a corporation, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 16122.

United States Court of Appeals
Eighth Circuit.

May 15, 1959.

**600**

Harold A. Thomas, Jr., St. Louis, Mo. (Carroll C. Gilpin and Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., on the brief), for petitioner.

Fannie M. Boyls, Atty., N. L. R. B., Washington, D. C. (Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., and Fred J. Hahn, Atty., N. L. R. B., Washington, D. C., on the brief), for respondent.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This case is before this Court upon the petition of Bachman Machine Company, a Missouri corporation, herein referred to as Bachman, for a review and reversal of an order of the National Labor Relations Board dated October 10, 1958, which dismissed a complaint issued by the General Counsel of the Board, on its behalf, (based on charges filed with it by Bachman) against Warehouse and Distribution Workers Union, Local 688, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, herein called the Union. The order of the Board and the findings and conclusions upon which it was based are reported in 121 N.L.R.B. No. 165.

The complaint was issued on January 22, 1958, by Ralph E. Kennedy, Regional Director of the Board for the Fourteenth Region (St. Louis, Missouri). The complaint charged, in substance, that, in connection with and in furtherance of a strike called by the Union about September 23, 1957, and maintained against the Plastics Molding Company, a Missouri corporation, herein called Plastics, for the employees of which the Union was the certified bargaining representative, the Union on or about December 9, 1957, commenced picketing Bachman (the employees of which are represented, for collective bargaining, by District 9, International Association of Machinists, AFL–CIO), with the object of forcing those who normally did business with Bachman to cease dealing with it. The complaint also charged that the acts of the Union in that regard constituted unfair labor practices affecting commerce within the meaning of Section 8 (b) (4) (A) of the National Labor Relations Act, as amended, 61 Stat. 136, 141, 29 U.S.C.A. § 158(b) (4) (A). That section provides:

"It shall be an unfair labor practice for a labor organization or its agents * * * (4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring * * * any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person * * *"

The Regional Director, pursuant to Section 10(l) of the Act, 29 U.S.C.A. § 160(l), on February 20, 1958 obtained from the United States District Court for the Eastern District of Missouri a restraining order, and on April 18, 1958 a temporary injunction, enjoining the Union from picketing Bachman's premises. The injunction was finally vacated following the Board's dismissal of the complaint.

The Board based the dismissal upon the ground that the relationship between the two corporate employers was such, because of common ownership and actual common control over labor policies, that

they constituted allied employers and were, for the purposes of Section 8(b) (4) (A), a single employer. In its brief the Board says: "The sole issue before this Court is whether the Board properly found Plastics and Bachman so allied in interest as to become a single employer for the purposes of Section 8(b) (4) (A) of the Act. For, in the absence of such allied relationship, it is undisputed that the Union's picketing of Bachman premises would fall within the secondary boycott proscription of Section 8(b) (4) (A)."

The question, then, is whether there is an adequate evidentiary and legal basis for the Board's determination that the two corporate employers were so closely allied as to constitute one employer for the purposes of Section 8(b) (4) (A).

The evidentiary facts are largely undisputed, and it is apparent that the Board's dismissal of the complaint was based mainly, if not entirely, upon its finding that William N. Bachman, who was President and a majority stockholder of each company, was in actual control of the labor policies of both.

In order to present a fairly accurate picture of the situation out of which the problem arises, it is necessary to state the facts in considerable detail.

Plastics and Bachman are separate legal entities. They are engaged in different lines of business. Plastics makes plastic parts for industrial customers. It employs unskilled labor—molders and finishers, classified as laborers. It conducts its operations in a building at 4211 Broadway, in St. Louis, Missouri. Bachman manufactures tools, dies, jigs, molds, and special machinery. It conducts its business in two buildings, one of which is on Broadway, about 650 feet from the building occupied by Plastics; the other, 4301 North Eleventh Street, about a block and a half away from Bachman's other building. In the Eleventh Street Building, designated as Bachman No. 1, the employees are highly skilled tool and die makers. In the other building occupied by Bachman, designated as Bachman No. 2, the employees are semiskilled mechanics who produce metal stampings, assemblies, and the like, and are classified as production workers. Bachman employees have for many years been represented, for collective bargaining, by District 9, International Association of Machinists, AFL–CIO. The employees of Plastics are, as already stated, represented by the Union involved in this case.

William N. Bachman, Sr., is the President of and majority stockholder in both Bachman and Plastics. Each is a Bachman family corporation. The officers and directors of both companies are members of the Bachman family. The buildings occupied by Bachman and the building occupied by Plastics are owned by William N. Bachman and his wife. Each company maintains its own books and records, attends to its own business, and is operated as a separate enterprise. Neither company does, nor is equipped to do, the work of the other. They have no employees in common, except a bookkeeper who keeps the books for both companies and whose salary is divided between them. She shares an office with William N. Bachman at the Eleventh Street building. The companies do not interchange employees. They have no common supervisors. Each is a customer of the other in so far as each needs what the other produces. Bachman, when it requires plastic parts for use in its business, buys them from Plastics, and Plastics buys molds from Bachman when needed. Each company invoices the other for what it buys from it, and payments are made by check. During 1957, sales and services to Plastics from Bachman amounted to about $80,000, and Bachman bought plastic parts from Plastics at a cost of about $70,000. Plastic parts obtained from others by Bachman amounted to about $10,000. Bachman's total sales in 1957 were about $451,000. Plastics obtains about one-third of the molds it uses in its business from its customers, and about 80% of the remaining two-thirds comes from Bachman.

William N. Bachman has been in the tool and die business for about 31 years and is an expert in making tools, dies, fixtures, and gauges. He knows little about the production of plastic items, and therefore in 1953 hired Robert McDorman, a chemical engineer, as general manager of Plastics, to direct and control its operations. According to the testimony of Mr. Bachman, McDorman can hire and fire employees of Plastics, has full authority as its manager, is in charge of formulating labor relations policies at Plastics, does not have to consult with Mr. Bachman, as President, in that regard, and is "authorized to go as far [with the Union] as he can at any time, because he knows his own costs."

McDorman testified that he conferred with Mr. Bachman as to labor matters, and obtained his advice, but could make decisions, could hire, fire, give increases, and set labor policies at Plastics, and that is was he that negotiated with the Union. It was Mr. Bachman's testimony that he was present at every bargaining session with the Union during the strike against Plastics because "as President of the company" he liked "to hear what goes on * * * to get it first-hand, if possible"; that he made no decisions as to whether some particular demand of the Union should be granted or rejected; that most of the talking was done by McDorman and a Mr. Gilpin, a legal adviser for Plastics.

Edward C. Brown, a representative of the Union, testified that, at the first bargaining session, Mr. Bachman and Mr. Gilpin were present; that there were seven such meetings at the Plastics plant, at each of which Mr. Bachman was present, and that he made decisions as to whether or not he would "give a certain demand"; that Mr. Bachman would ask McDorman for facts and figures as to wage rates and how many people were in a certain department, and about the hours of work; that answers to demands of the Union or counter-proposals were made by Mr. Bachman · on behalf of Plastics; that Mr. Gilpin, counsel . for Plastics, said that he was there to represent Plastics from a legal point of view and to give legal advice, and that any decisions were to be made by Mr. Bachman.

Tom Ryan, a business representative of the Union, testified that he was present at two or three negotiation meetings with representatives of Plastics, who were Mr. Gilpin, Mr. Bachman and Mr. McDorman; that Mr. Bachman did practically all of the talking for the company, and that Mr. McDorman was referred to with respect to statistical matters.

The Board, with one member dissenting, adopted the findings, conclusions and recommendations of the Trial Examiner, who discredited the evidence of Mr. Bachman and Mr. McDorman to the effect that the latter was in sole charge of labor relations at Plastics, and found that "actual control resides with President Bachman."

While there might seem to be an element of unfairness in inferring from the record as a whole that McDorman, the General Manager of Plastics, had played the role of a mere statistician in the bargaining negotiations with the Union, there was, we think, substantial evidence to support a finding that, during the negotiations between Plastics and the Union, Mr. Bachman actively participated and made decisions.

The situation, then, with which we are confronted is about as follows: Bachman and Plastics are two separate and distinct corporate employers; the capital stock of each is owned by one family; each has officers and boards of directors drawn from members of the family, the head of the family being the President of each company; each company is engaged in a different, separate and non-integrated business; each is a substantial customer of the other; each operates a separate business in a separate plant, the plants being in fairly close proximity to each other, in the same city; each plant has a separate labor force represented by a different union; the employees of one plant are skilled or semi-skilled mechanics; the employees of

the other are unskilled; the President of each company is its majority stockholder, concededly in the actual control and management of one company, and found by the Board to have been in actual control of the labor policies of the other company and to have participated actively in the negotiations with the Union which represented its striking employees, who extended their strike to the company which was not their employer.

The Board's contention is that where common ownership and common actual control of labor relations exist to the extent shown in the instant case, the two corporate employers must be found to be allied and to constitute a single employer for the purposes of Section 8(b) (4) (A) of the Act, and that therefore a strike by the employees of one can be legitimately extended to the other.

Bachman relies heavily upon J. G. Roy & Sons Co. v. National Labor Relations Board, 1 Cir., 251 F.2d 771, a case in which the Board, as here, had held that two family-owned corporations, engaged in different lines of business, in separate locations, were, for the purposes of Section 8(b) (4) (A), a single employer because one was a substantial customer of the other and because there was common ownership and common control. The Court of Appeals, after ruling that the customer relationship was not enough to show that the two companies were engaged in integrated operations, held that there was no evidence of mutual common control over labor policies or any other phase of the operations of the two companies, and that potential common control, because of the common ownership of stock, was not enough to justify a ruling that the two corporate employers were a single employer under Section 8(b) (4) (A). The order of the Board dismissing the complaint of its General Counsel in that case was reversed.

Board member Rodgers had, in the J. G. Roy & Sons Co. case, 118 N.L.R.B. 286, dissented, as he has in the instant case. Among other things, he said (page 293 of 118 N.L.R.B.):

" * * * But under the majority's decision in this case the rule is being extended to the point where the public policy of the Act can be defeated by the mere coincidence of common ownership and ordinary buying and selling. Suppose that one individual or group owns a trucking company and also a tire factory. If the trucking company purchases tires from the latter, it forfeits the protection of the Act, according to the majority, in the event of a secondary boycott stemming from a labor dispute with the tire factory. Another example is common ownership of a newspaper and a theater. If the latter buys advertising space in the paper, it makes itself an open target for secondary boycotts by unions disputing with the newspaper. Thus outlawry under the Act becomes the price of common ownership and ordinary buying and selling.

"I would also call attention to the fact that Section 8(b) (4) was designed to protect secondary employees as well as their employers. In this case the employees of Roy Construction have been made the victims of a dispute that does not concern them at all and in which their own interests are in no way involved. They have been induced to strike not for the purpose of achieving any legitimate union demand but of forcing Roy Lumber to violate the Act by imposing a collective-bargaining representative on its employees, regardless of their own wishes and rights. It would seem then that this Board should seek to prevent such conduct rather than to reach for an interpretation of the Act which permits and encourages it."

Judge Aldrich, of the United States District Court for the District of Massachusetts, in granting a preliminary injunction against the union which was charged with a violation of Section 8(b) (4) (A) in the J. G. Roy & Sons Co. case,

overruled the contentions of the union that the two family corporations involved were, because of common ownership and control, so closely allied as to constitute but one employer for the purposes of Section 8(b) (4) (A) of the Act. Alpert v. United Brotherhood of Carpenters, etc., D.C.Mass., 143 F.Supp. 371, 375–376.

In a footnote to the majority opinion in the instant case, the Board says (page —— of 121 N.L.R.B.):

"We reaffirm the policy set forth in the Board's decision J. G. Roy and Sons Company, 118 NLRB 286, rev[erse]d [1 Cir.] 251 F.2d 771, that the 'straight line operation' element is not a prerequisite to the establishment of an ally relationship and that common control and ownership, as here, is sufficient to establish such a relationship."

Board member Rodgers' dissent in the instant case reads as follows (page —— of 121 N.L.R.B.):

"Citing the Board's decision in the Roy Lumber case, the Trial Examiner concluded that the two companies involved herein, Plastic Molding Company and Bachman Machine Company, constituted a 'single employer for the purposes of Section 8(b) (4) (A) and that therefore Bachman was not a neutral or wholly disinterested company in the dispute between Respondent [the Union] and Plastics.' This conclusion was predicated on the Examiner's preliminary finding that Bachman and Plastics were commonly owned and had labor policies commonly controlled.

"I understand my colleagues to say that Bachman and Plastics together do not constitute a 'straight-line operation.' But their decision to dismiss the complaint, as the Trial Examiner recommended, stands as a square re-affirmance of the doctrine propounded by the Board in the Roy Lumber case that, for the purposes of Section 8(b) (4) (A), entirely separate business enterprises will be deemed 'allies'—and il-

legal, secondary, conduct will thus be validated—upon a mere showing that such enterprises are commonly owned and controlled. I did not agree with this doctrine when it was propounded by the Board. I do not agree with it now. The Court of Appeals set aside the Board's dismissal of the complaint in the Roy Lumber. [J. C. Roy and Sons Co. v. N. L. R. B. [1 Cir.] 251 F.2d 771.] The facts in this case are not significantly different from those in the latter case. Accordingly, for the reasons set forth in my dissent in the Roy Lumber case, I dissent from the decision to dismiss the instant complaint."

Judge Weber, of the United States District Court, who heard and granted the Regional Director's application for a preliminary injunction against the picketing of Bachman by the Union, upon virtually the same evidence later adduced before the Board's Trial Examiner, evidently did not believe that the two companies here involved were so closely allied with respect to control over labor relations or the management of their respective operations as to make them one employer and to deprive Bachman of the protection provided by Section (8) (b) (4) (A). Judge Weber, who observed the witnesses and heard them testify, found that there was reasonable cause to believe that "Except by common ownership Bachman has no interest in or connection to, or control of Plastics, and the two are not integrated operations."

It is a reasonable assumption, also, that the Regional Director who filed the complaint and was familiar with the facts, did not believe that there was any such allied relationship between Bachman and Plastics as could justify the Union in picketing Bachman, to its prejudice and that of its employees.

■ We are not unmindful that the findings of the Board are conclusive with respect to questions of fact when supported by substantial evidence on the record as a whole. We are also aware that the Board's interpretation and ap-

plication of the Act in doubtful situations are entitled to weight. National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U.S. 675, 691–692, 71 S.Ct. 943, 95 L.Ed. 1284. Where the views of the Board as applied are in conformity with the dual congressional objectives of preserving the right of labor organizations to bring pressure to bear on offending employers in primary labor disputes and of shielding unoffending employers and others from pressures in controversies not their own, the views of the Board should, no doubt, be accepted. National Labor Relations Board v. Denver Building & Construction Trades Council, supra, at page 692 of 341 U.S. at page 953 of 71 S.Ct. We note that in that case the Supreme Court said (at pages 689–690 of 341 U. S., at page 952 of 71 S.Ct.):

> "We agree with the Board also in its conclusion that the fact that the contractor and subcontractor were engaged on the same construction project, and that the contractor had some supervision over the subcontractor's work, did not eliminate the status of each as an independent contractor or make the employees of one the employees of the other."

This would seem to indicate that the proximity of employers to each other was not of significance.

We shall assume that the discrediting of the testimony of Mr. Bachman and McDorman to the effect that the latter was in complete control of the labor relations at Plastics, and the reliance by the Board upon the evidence of the representatives of the Union that it was Mr. Bachman who did the actual negotiating for Plastics with the Union, justified the determination of the Board that he controlled the labor relations of Plastics as well as those of Bachman. But we think the evidence fell short of establishing that both companies were under such actual common management or control as to make them allies and a single employer for the purposes of Section 8(b) (4) (A) of the Act. The Board's conclusion, in our opinion, was not in conformity with the congressional

purpose of shielding unoffending employers, their employees, and others, from pressure in controversies not their own. We fail to see why Bachman should, under the evidence, be regarded as an offending employer or why it and its employees should be embroiled in the controversy between Plastics and its employees and their Union, merely because the President of Bachman, who was also the President of Plastics, controlled or participated in the control of the labor relations of that company.

If Bachman's employees had, during the strike, done work for Plastics which except for the strike would have been done by employees of Plastics (Douds v. Metropolitan Federation of Architects, etc., D.C.S.D.N.Y., 75 F.Supp. 672, 677), or if the two companies were engaged in an integrated operation, as in the Irwin-Lyons Lumber Company case, 87 N.L.R. B. 54, or if Bachman had actually made common cause with Plastics in resisting the demands of the employees of Plastics or in interfering with the Union in maintaining the strike at Plastics, a different problem would be presented.

We go no further than to say that we consider the evidence of common ownership and of Mr. Bachman's participation, as President of Plastics, in the bargaining sessions with the Union, which represented only the employees of Plastics and had nothing to do with the employees of Bachman, insufficient to justify the conclusion of the Board that Plastics and Bachman were so intimately and inextricably united as to constitute them one employer for the purposes of Section 8 (b) (4) (A), thus depriving Bachman and its employees and others of the protection provided for an unoffending employer.

The order of the Board dismissing the complaint of its General Counsel, is set aside, and the case is remanded to the Board for further proceedings not inconsistent with this opinion.

WOODROUGH, Circuit Judge (dissenting).

William N. Bachman is now and continuously has been the acting head of

the machine tool and die business which he started in 1927 and conducts in the three shops in St. Louis, which he acquired as the business expanded and now owns. He now has his two sons working with him and the business has been separated in form into two family owned corporations referred to herein respectively as "Plastics" and "Bachman". Under the present form Plastics gives checks to Bachman and Bachman gives checks to Plastics for the amounts intended to be charged to the outside customers for products as they reach a certain stage and·are taken from one of the shops to the other, in the regular course of the business, and that procedure enables the lady in Mr. Bachman's office, who keeps the books, to make the proper entries against those customers. There is no bargained buying and selling for profit between the two corporations.

Mr. Bachman owns dominant stock interests and occupies the position of President in both corporations and exercises actual control of their respective labor relations policies, the employees in Bachman being skilled workmen and those in Plastics unskilled, belonging to different unions. The employees in the Plastics shop bargained with him concerning wages and working conditions in sessions contemplated by the federal act and, failing agreement, went on strike to put pressure on him to meet their demands, and then picketed in front of the Bachman shop, where he had his office, to add to the pressure.

The sole issue in the case is whether or not that picketing violated Section 8 (b) (4) (A) of the Federal Act.

The Labor Board found that it did not violate the Act because there was a single management and control of labor relations policy at the shops and the interests against which the picketing was directed were in actuality not neutral or wholly disinterested in the labor dispute. The argument to the contrary is in essence that the form of separate corporations into which the business has been cast precludes basing decision on such considerations and compels a rul-

ing that the Section prohibited the picketing at Bachman.

It seems to me that the Labor Board ruled properly within its competency as shown in its findings, decision and order.

After the active head man of the business had bargained in a labor dispute with the union representatives of the unskilled employees in many sessions and had rendered decision against their demands with such finality that they went on strike to coerce him, they cannot regard him as neutral or wholly disinterested in the labor dispute. If he had continued to carry on the business as an individual, as he had done since 1927, instead of in the corporate form that was adopted, there could have been no question of the right of the unskilled strikers to include this shop where he and his skilled men were at work as part of the same business as that in which the strikers were employed. His control of all their labor relations would have unified them in interest with him and there could have been no question of the right of the strikers to apply lawful pressure at the shop where he had his office.

It does not seem to me that the record shows any real change that is material here, occurred in the way the same machine tool and die business was carried on after the corporations were formed. Mr. Bachman continued to control all labor relations policies as before and those relations are what are involved here. The skilled men retaining their jobs are still allied with Mr. Bachman in economic interest. As Mr. Bachman testified concerning initial phases of the strike, the employees of the Bachman Corporation refused to work "just a few hours, until they learned the score, then they were back on the job." Mr. Bachman is not resisting the strikers just for himself or for owners. He tries to keep the skilled and unskilled employees in cooperation and there the interest of the skilled employees comes ahead of owners in the sense that he must see to it that whether profit is left for owners or not the skilled employees who stay with him must get their full pay. He stands for

their interest and they are allied (the same as the corporations) to resist the demands of the strikers upon the fruits of their common efforts.

The Labor Board does not rest its decision on "straight line operation" by, or "farmed out" work for, the struck employer, but I consider its decision justified by the common ownership and management of the business carried on in the three shops and Mr. Bachman's control of the labor relations policy towards all the employees.

The fact is stressed that the two corporations make separate tax returns and doubtless other tax returns are made in respect to the three shop buildings, used in the business. But the Board's concern is with the labor practices and relations. It cannot be bound by the adjustments that may satisfy revenue requirements.

The question in this case whether the relations of the unskilled workmen to Mr. Bachman, to the skilled workmen and to the corporations are such that the picketing in issue was directed against interests in fact allied in respect to the labor dispute against the strikers was properly for the Labor Board. The alternative procedure to have it determined in federal court injunction suits is inappropriate.