291 F.Supp. 409 (1968)
John A. PENELLO, Regional Director of the Fifth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD
v.
AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS WASHINGTON-BALTIMORE LOCAL, AFL-CIO.
Civ. A. No. 19942.
United States District Court D. Maryland.
October 21, 1968.
Charles B. Slaughter, Maurice J. Nelligan, Jr., Baltimore, Md., for petitioner.
James J. Doyle, Jr., and Theodore Sherbow, Baltimore, Md., for charging party.
Bernard W. Rubenstein, Baltimore, Md., and Samuel Levine, Washington, D. C., for respondent.
NORTHROP, District Judge.
The Baltimore News-American, a division of The Hearst Corporation, which publishes a daily newspaper in Baltimore, Maryland, has charged before the National Labor Relations Board the respondent Washington-Baltimore Local of AFTRA with violation of the secondary boycott provisions of the National Labor *410 Relations Act, as amended (§ 8(b) (4) (i) (ii) (B), 29 U.S.C. § 158(b) (4) (i) (ii) (B)). After investigation of this charge, this action for a temporary injunction was brought by the Regional Director of the National Labor Relations Board under Section 10(l) of the Labor Act (29 U.S.C. § 160(l)).
Respondent has been engaged in a primary labor dispute with WBAL-TV and WBAL Radio divisions of The Hearst Corporation. These two divisions operate a television and a radio broadcasting station respectively in the city of Baltimore. Since the distinction between the two divisions is not material to this suit, hereinafter they will both be referred to as WBAL. In furtherance of its dispute with the management of WBAL, respondent picketed the premises of the Baltimore News-American on September 23, 1968, and October 2 and 3, 1968, for a brief period. Respondent admits and stipulates that it has no dispute with the News-American as such and it is not certified as the bargaining representative of any of the News-American employees. In consequence of the picketing certain employees of the News-American refused to report to work and the publication of the News-American was substantially curtailed, and scheduled publishing and distribution was interfered with and, for a period of time, ceased altogether on October 2, 1968.
Hearst is a Delaware corporation with its principal offices in New York City, New York. It maintains a number of divisions, but only the above-mentioned are located in the Baltimore area and the subject of this dispute.
The petition alleges that the Union, which has a primary labor dispute with Hearst Corporation, WBAL Division, picketed the premises of The Hearst Corporation, News-American Division in violation of Section 8(b) (4) (i) and (ii), subparagraph (B) of the Act. This section reads as follows:
"It shall be an unfair labor practice for a labor organization or its agents * * * (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is * * * (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9: Provided, That nothing contained in this clause shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing * * *"
The sole issue here is whether under this section WBAL Division and News-American Division are separate "persons" and are "other persons", or are they one and the same "person".
Section 2(1) of the Act reads as follows:
"The term `person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers." [Emphasis supplied.]
The Board contends that the two operations are completely separate and independent, with no common control of their daily operation or labor relations by Hearst. Therefore, the News-American is a neutral to the AFTRA-WBAL dispute and is entitled to the protections *411 of the secondary boycott provisions of the Labor Act.
AFTRA contends the News-American and WBAL are part of The Hearst Corporation. Since they are not two corporations commonly owned, not in any way separate legal entities, the picketing of News-American was lawful because AFTRA is striking Hearst and thus any of that corporation's activities were vulnerable to primary picketing.
To sharpen further the issue the parties agree that the word "persons" as defined in Section 2(1) can be equated with "a separate employing entity".
The function and responsibility of the district court in a Section 10(l) proceeding were clearly indicated by Chief Judge Biggs of the Third Circuit speaking in Schauffler for and on behalf of the NLRB v. Local No. 1291, 292 F.2d 182, 187 (3d Cir. 1961):
"The Board need not show that an unfair labor practice has been committed, but need only demonstrate that there is reasonable cause to believe that the elements of an unfair labor practice are present. Nor need the Board conclusively show the validity of the propositions of law underlying its charge; it is required to demonstrate merely that the propositions of law which it has applied to the charge are substantial and not frivolous. * * *"
It is my duty to determine if there is reasonable cause to believe that WBAL, instead of Hearst, is the primary employer and that WBAL and the News-American are not "commonly controlled" notwithstanding their common ownership.
There is no dispute with the law as it has been decided in any number of cases that two or more separate legal corporations or legal entities, if you will, may be read as one "person" under the Act if they are engaged in a common enterprise or activity. If such nexus is established, a primary labor dispute with one reaches all. Under these decisions such separate legal entities are one. But counsel for AFTRA contend that while many separate legal entities can be made "one person" a single legal entity cannot be said to conduct separate activities which would bring a union under the secondary boycott provisions of the Act if in a primary dispute with one of those activities it struck or picketed another. In short, they say under the definition of "persons" you can make many into "one person" but you cannot make one into many.
Counsel for the Board contend that the Act was fashioned, and the legislative history supports their contention, to prevent disruption of commerce by conduct proscribed by Section 8(b) (4) (B) and to implement the exercise of the power of the court in aid of "prompt elimination of the obstruction to the free flow of commerce".
To effectuate these ends, they urge, the courts must look to the broad definition of "persons" and not to fine legal technicalities. Corporate structure is ignored when separate corporations engage in a common enterprise and seek to invoke the secondary-boycott provision to prevent legitimate primary action. It is substance that counts and not fiction.
So while AFTRA would lay particular stress on the single corporate entity the Board would deal with functional aspect and control. The cases cited to the Board's proposition of this emphasis would seem to bear out this view.
All jurisdictional allegations are admitted by AFTRA except those that would tend in any way to establish the independence of these divisions from Hearst control.
A recitation of the testimony to this point is therefore in order.
It is undenied that News-American and WBAL are divisions of Hearst Corporation. Their names are Baltimore News-American, Division of Hearst Corporation, and WBAL, Division of Hearst Corporation. WBAL has its license in the name of WBAL, Division of Hearst Corporation. And it is true that WBAL *412 identifies itself as the Baltimore News-American station and claims (but does not actually have) "direct lines to the News-American". The only evidence of cooperation between the two divisions was an attempt two to three years ago to exchange news stories between the news departments which never fully developed and soon ceased, never to be resumed. The two divisions also buy and sell advertising from each other at the established public rate for such services. Aside from these contacts the two divisions do not cooperate in any way and, in fact, are keen competitors for the advertising dollar in the Baltimore metropolitan area.
The testimony is that both of the divisions are separate and autonomous not only as between each other, but also as to each division and the parent Hearst Corporation. Although each division must submit a yearly budget and a monthly accounting, both divisions maintain these reports are forwarded to Hearst in New York on an informational basis rather than an advisory basis, and that neither the reports nor the day-to-day operations of their respective divisions are subject to the approval of Hearst. While Hearst has an advisory labor-relation staff especially for the use of its newspapers, each division maintains local legal counsel (both employ the same Baltimore firm but have completely different labor problems) and establishes its own labor policy. Each negotiates and signs its own labor contract. The News-American has always had its labor relations negotiated and settled by its publisher, and since 1966, complete authority to negotiate and sign WBAL's labor agreements has been with its general manager. Prior to 1966, while the negotiations were done by WBAL, approval of all labor agreements was needed by a vice president of Hearst located in Baltimore who was in charge of all radio and television divisions of Hearst.
Each division is completely responsible for its day-to-day operations. The News-American, through its publisher, Mr. Mark Collins, and its business manager, Mr. W. Melvin Street, has complete authority over editorials, newspaper policy and operations. Mr. Brent Gunts, as general manager of the television station, and Mr. Alfred Burk, as general manager of the radio station, have complete authority over their stations' policy and operations. Mr. Gunts has authority to enter into a contract for any amount for the operation of the station without resort to Hearst in New York and may authorize capital expenditures of less than $10,000 without consulting New York. Both divisions maintain their own separate financial system, separate bank accounts, pay and collect bills and pay all salaries and wages. The manager of the WBAL television and radio have a profit-sharing arrangement with Hearst. Each was told by Hearst to manage his division as if it was his "own business".
It is true that the News-American subscribes to several services of Hearst which are available to it and to all Hearst newspapers. The principal services are King Features, Hearst Headline Service, and Hearst Newsprint. However, the News-American may use such of these services as it chooses and may use different newsprint sources, but does not, since it receives the newsprint at a discount price.
AFTRA, as further evidence of Hearst overall control, introduced employment contracts of Hearst with News-American employees and with the publisher which would permit Hearst to transfer the publisher and certain employees to other Hearst divisions. This potential right has in fact never been exercised by Hearst. There are certain News-American reporters who from time to time work for WBAL and indeed one sports-caster who is a sports columnist of the News-American broadcasts regularly for WBAL. However, all of these individuals are paid by WBAL at the going rate for such services. The testimony is that people from other newspapers are hired at the same rate from time to time. It *413 is entirely in the discretion of WBAL who may be employed by it.
Except for this hiring of News-American employees by WBAL there is no overlapping of employees whatsoever. The physical facilities of each are some distance apart.
The things each has in common to the other are that they are communications media and divisions of Hearst. Otherwise the facts would support actual independent operations. There is, of course, common ownership.
As the courts have often indicated, common ownership alone will not support a claim of single employer, J. G. Roy & Sons Co. v. NLRB, 251 F.2d 771 (1st Cir. 1958); Bachman Machine Co. v. NLRB, 266 F.2d 599 (8th Cir. 1959). As the United States Court of Appeals for the District of Columbia stated in Miami Newspaper Pressmen's Local No. 46 v. NLRB, 116 U.S.App.D.C. 192, 322 F.2d 405 (1963):
"There must be something more in the form of common control, as it is usually phrased, denoting an actual, as distinct from merely a potential integration of operations and management policies." [Emphasis added.]
This is a practical and realistic approach to the problem. Its aim is to protect innocent parties who are not involved in the primary dispute. A neutral under the secondary-boycott provisions of the Act has been referred to by Senator Taft as:
"[A] third person who is wholly unconcerned in the disagreement between an employer and his employees." 93 Cong.Rec. 4198, II Legislative History of the Labor Management Relations Act, 1947, 1106.
The News-American has no direct interest in the dispute between the local and WBAL. The United States District Court for the Northern District of California in a similar situation involving two Hearst newspapers which were separate divisions found reasonable cause to believe an unfair labor practice had been committed. Kennedy v. Newspaper Guild, 69 LRRM 2301 (1968).
While the potential to control daily operations of the News-American and WBAL exists and while some cooperative contacts exist between News-American and Hearst, the court finds that these contacts do not amount to an integration of operations or management policies of its divisions by Hearst. Cf. NLRB v. Gibralter Industries, Inc., 307 F.2d 428 (4th Cir. 1962).
Counsel for AFTRA would urge that the criteria of common control and integrated operation and labor policy, while applicable to determine if two different legal entities may be considered as a single employer or "person" are not pertinent where a single legal entity is concerned. According to AFTRA, no legal entity can be considered segmented no matter how separate its various operations may actually be. All parts of a single legal person must per se be considered involved in a labor dispute which one part has. AFTRA would urge that this is especially true where two parts of the same legal entity are located in the same city.
This court does not agree. WBAL is the employer of the striking AFTRA employees and is primarily involved in the labor dispute. The News-American in a practical and real sense is not involved in the dispute between WBAL and AFTRA. When the Union placed its pickets at the site of the News-American, its aim was to place indirect or secondary pressure on WBAL. It is the admitted aim of § 8(b) (4) to circumscribe such indirect pressure. This court does not feel that the tenuous thread of legal oneness, nor a potential accountability to Hearst, are sufficient to deny the News-American the protections of the Act. The Supreme Court has said:
"It is a `familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.' * * * That *414 principle has particular application in the construction of labor legislation which is `to a marked degree, the result of conflict and compromise between strong contending forces and deeply held views on the role of organized labor in the free economic life of the Nation and the appropriate balance to be struck between the uncontrolled power of management and labor to further their respective interests.'" National Woodwork Mfrs. Ass'n v. NLRB, 386 U.S. 612, 619, 87 S.Ct. 1250, 1255, 18 L.Ed.2d 357 (1967).
The reverse is also true. Indeed, the term "person" as used in the Act has been liberally construed. Local Union No. 25 Int. Brotherhood of Teamsters etc. v. New York, New Haven & Hartford RR, 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166 (1956); NLRB v. Local No. 313 IBEW, 254 F.2d 221 (3rd Cir. 1958).
In the light of all of the evidence presented and an analysis of the applicable law, this court finds that there is, and petitioner had, reasonable cause to believe that respondents have engaged and will continue to engage in conduct in violation of the secondary-boycott provision of the National Labor Relations Act and that an injunction should be issued pursuant to Section 10(l) of that Act.
Counsel will submit an appropriate order.